**In re Ellsworth David MARTIN and Donna Ruth Martin, Debtors.**

**Richard E. BARBER, Chapter 7 Trustee for Ostrom–Martin, Inc., Plaintiff,**

v.

**Ellsworth David MARTIN, Defendant.**

Bankruptcy No. 92–82379.
Adv. No. 92–8209.

United States Bankruptcy Court, C.D. Illinois.

May 18, 1993.

Barry M. Barash and Richard A. Dahl, Barash, Stoerzbach & Henson, Galesburg, IL, for plaintiff.

Stephen J. West, Safford, West, Tornow & Jaeger, Peoria, IL, for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

OSTROM–MARTIN, INC. (OMI) was a grain dealer. The Defendant was a member of OMI's Board of Directors. OMI became indebted to certain gain producers. An involuntary Chapter 7 petition was filed against OMI, which ultimately consented to an adjudication. (January 14, 1992, Case No. 92–80099) The Defendant filed his own voluntary Chapter 7 bankruptcy.

After the filing of the involuntary petition against OMI, this Court entered an order in its case permitting the Illinois Department of Agriculture (IDA) to proceed with the liquidation of certain grain assets and the payment to certain grain producers. After that occurred, IDA filed an adversary action in OMI's bankruptcy case against OMI's trustee in bankruptcy, alleging that after it had liquidated certain grain assets and paid certain grain producers it had to obtain $668,602.00 from the Illinois Grain Insurance Fund to satisfy grain claims and it was entitled to a lien in the amount of $668,602.00 plus interest on funds held in the bankruptcy estate of OMI that are directly traceable to grain assets.[1] In that action, the Trustee asserted several counterclaims. First, under Section 545 of the Bankruptcy Code 11 U.S.C. § 545, IDA's statutory liens should be avoided. Second, under the theory of equitable subordination IDA's claim should be subordinate to the claims of other creditors.

Third, grain producers should be paid 100% before IDA gets anything from the assets of OMI's bankruptcy estate.

The Trustee also brought this three-count adversary complaint against the Defendant in his bankruptcy case. The Trustee alleges the Defendant ignored his duties as a Director in permitting OMI to make false statements concerning its financial condition to its accountants, who, in turn, based upon those false statements, made representations to the IDA, which permitted OMI to keep its grain dealer's license and continue to do business with grain producers which resulted in IDA and the grain producers being injured. Stated in less legalistic terms, the Trustee contends the Defendant stuck his head in the sand while OMI made false representations which permitted it to continue in business and injure IDA and the grain producers. The Defendant filed a motion to dismiss. After hearing on the motion, the matter was taken under advisement. For the following reasons, the motion to dismiss is allowed.

Count 1 is brought under Section 523(a)(2)(A) and (B) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A) and (B), for obtaining property by a false representation other than a false financial statement and obtaining property by a false financial statement. One of the elements of a cause of action under § 523(a)(2)(A) and (B) is that the defendant obtained property by the alleged wrongful act. In *In re Dunston*, 117 B.R. 632 (Bkrtcy.D.Colo.1990) the court stated:

In addition to proving each of the above seven elements of fraud or false representation, the creditor must prove that the debt was for "obtaining money, property, services, or an extension, renewal, or refinance of credit." (11 U.S.C. § 523(a)(2); *In re Wade, supra* [43 B.R. 976] at 980 [ (Bkrtcy.D.Colo. 1984) ].) This has been interpreted to mean that the debtor receive the benefits of the property. To meet the require-

---

1. IDA acted under the Illinois Grain Insurance Act as found in Chapter 114, Section 701, et seq. Ill.Rev.Stat. The IDA claims a lien pursuant to Chapter 127½, Section 40.23 Ill.Rev.Stat. portions of which are attached hereto as Appendix A.

ments of this subsection, the debtor needs to receive some benefit from the property, but not necessarily the property itself. (The so-called "receipt of benefits" theory.) *Id* at 981–982; *In re Winfree,* 34 B.R. 879, 883 (Bankr.M.D.Tenn. 1983).

*Accord, In re Bruner,* 43 B.R. 143 (Bkrtcy. E.D.Mo.1984). There is no allegation the Defendant did so. The mere fact IDA and grain producers lost a substantial sum of money through OMI does not mean the Defendant received it or any benefit from it. Furthermore, for the reasons hereinafter set forth, the Trustee has no standing to bring this cause of action on behalf of IDA and the grain producers.

Count 2 is brought under Section 523(a)(4), 11 U.S.C. § 523(a)(4), for fraud while in a fiduciary capacity. In contrast to § 523(a)(2), there is no comparable language contained in § 523(a)(4), and courts have held that a corporate officer may be liable even though he did not personally profit from the defalcation or fraud. *In re Pieper,* 119 B.R. 837 (Bkrtcy.M.D.Fla. 1990).

Courts are split on the issue of whether a corporate director is a fiduciary within the meaning of § 523(a)(4). As the bankruptcy court noted in *In re Hutton,* 117 B.R. 1009, 23 C.B.C.2d 1052 (Bkrtcy.N.D.Okl.1990), the term "fiduciary capacity" under the Bankruptcy Code is much narrower than the term "fiduciary relationship" under state law. Finding that the § 523(a)(4) complaint filed by the Chapter 11 debtor/corporation against the debtor/officer must be dismissed, the court stated:

[I]t is apparent that there is no express trust between [the officer] and [the corporation]. There is no trust agreement, no intent to create a trust relationship, and no trust res. The fiduciary duty that the [debtor/officer] owes to the corporation under state law arises out of his capacity as an officer and director of the corporation. However, in order to be acting in a "fiduciary capacity" under the Bankruptcy Code, the fiduciary duties must not rise out of the relationship between the parties but out of an express

or statutory trust. Here there is no express trust between the Debtor and the corporation and therefore the Debtor was not acting in a "fiduciary capacity" within the meaning of § 523(a)(4) of the Bankruptcy Code.

Many other courts have reached the same result, requiring an express trust. *In re Baird,* 114 B.R. 198 (9th Cir.BAP 1990); *In re Nayee,* 99 B.R. 90 (Bkrtcy.M.D.Fla. 1989); *Matter of Gay,* 117 B.R. 753 (no fiduciary capacity between partners).

Other courts have reached a contrary result, either departing from the requirement of an express or technical trust, or giving that requirement a broader interpretation. *In re Winden,* 120 B.R. 570 (Bkrtcy.D.Colo.1990) (business partners are fiduciaries); *In re Thorsen and Co.,* 98 B.R. 527 (Bkrtcy.D.Colo.1989); *In re Schiraldi,* 116 B.R. 359 (Bkrtcy.D.Conn.1990); *In re Galbreath,* 112 B.R. 892 (Bkrtcy. S.D.Ohio 1990). In *In re Bruning,* 143 B.R. 253 (D.Colo.1992), the court held that the common law fiduciary relationship which arises between a director and the creditors of the corporation at the moment of insolvency comes within the exception to dischargeability of § 523(a)(4).

Even if this Court would adopt the broader definition and follow *Bruning,* which it has declined to do in the past, and find that the Defendant was acting in a fiduciary capacity for purposes of § 523(a)(4), that determination would not help OMI's Trustee. Just as under § 523(a)(2), the Trustee, for the reasons hereinafter set forth, has no standing to bring an action under § 523(a)(4) on behalf of specific creditors, IDA and the grain producers.

Count 3 is brought under § 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6), for willful and malicious injury. Under this count, like Count 2 above, there is no need to prove the Defendant has personally benefitted. One of the elements the Trustee must prove is that because of the alleged wrongful act, injury occurred. But there is no allegation OMI was injured because of the alleged wrongful act. Instead, the Trustee alleges IDA and grain

producers who transacted business with OMI after its insolvency, were injured. As discussed below, just as under § 523(a)(2) and (4), the Trustee has no standing to bring an action under § 523(a)(6) on behalf of specific creditors, IDA and the grain producers.

█ In support of his contention that the Trustee lacks standing to bring this proceeding, the Defendant relies on *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987). While that case is not factually similar to the present case, the court spoke to the question now before this Court:

It is axiomatic that the trustee has the right to bring any action in which the debtor has an interest, including actions against the debtor's officers and directors for breach of duty or misconduct. *Pepper v. Litton*, 308 U.S. [295] at 307, 60 S.Ct. [238] at 245 [84 L.Ed. 281 (1939)]. In that capacity, the trustee acts to benefit the debtor's estate, which ultimately will benefit the debtor's creditors upon distribution. He also has creditor status under section 544 to bring suits for the benefit of the estate and ultimately of the creditors. (Citations).

However, the trustee has no standing to bring *personal* claims of creditors. A cause of action is "personal" if the claimant himself is harmed and no other claimant or creditor has an interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors. If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim. *See 3A Fletcher Cyc Corp* §§ 1134, 1277.1 (rev. perm. ed. 1986).

A trustee may maintain only a general claim. His right to bring a claim "depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to specific creditors." (Citations.)

The equally valid mirror-image principle is that a single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner. *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 861 (10th Cir.1986) (liability of the corporation's fiduciary for violating a trust relationship applied to all creditors); *Ford Motor Credit Co. v. Minges*, 473 F.2d 918, 920–21 (4th Cir.1973) (right of action for directors' negligent mismanagement may only be maintained in name of corporation or its receiver if insolvent); *Dana Molded Products, Inc. v. Brodner*, 58 B.R. 576, 580 (N.D.Ill.1986) (creditor may not bring action against corporation's fiduciaries where the creditor is harmed indirectly); *In re Western World Funding, Inc.*, 52 B.R. [743] at 773 [ (Bkrtcy.D.Nev.1985) ] (action for fiduciary misconduct must be brought in the name of the corporation for the benefit of all persons entitled to participate in the recovery).

To determine whether an action accrues individually to a claimant or generally to the corporation, a court must look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors. In the oil companies' complaint, the two allegations of injury are these:

(d) That the Member–Owners are not jointly and severally liable to ECI's estate and to its creditors because of the Member–Owners' misuse of ECI and of ECI's corporate form;

(e) That the Plaintiffs are entitled to recover from the Member–Owners ... due to the Member–Owners' manipulation of ECI to the detriment of Plaintiffs.

The injury alleged by the oil companies, it can be clearly seen, is to the corporation directly and to the oil companies indirectly.

The allegations of the Trustee's complaint in the present case contrast starkly with those above made in *Koch*. As noted above, the Trustee's allegations of injury are to specific creditors—those grain pro-

ducers entering into transactions with OMI after it became insolvent and the IDA, for insurance funds paid to those grain producers.

■ However, he must represent all, or none. The reason why he must represent all or none is that any recovery will be distributable to all creditors according to the priorities established by § 507 of the Bankruptcy Code, 11 U.S.C. § 507. But that is not what the Trustee is attempting to do under any of the three counts. What he is attempting to do is to represent some of OMI's creditors to obtain a recovery that benefits all of OMI's creditors. Grain producers who acquired a claim before the alleged insolvency, who do not have action under § 523 would share with grain producers who acquired a claim after the alleged insolvency, who have a claim under § 523. That result would be a perversion of the Bankruptcy Code. The purpose of § 523 is that a debtor who defrauds a creditor should not escape liability for that debt and the defrauded creditor should recover in full. A defrauded creditor need not share *pari passu* with all other creditors.

■ Under § 523(a)(4) the perversion would arise in a slightly different context. Under § 523(a)(4) the fiduciary relationship must exist prior to the creation of the debt in controversy. *In re Thorsen and Co.*, 98 B.R. 527 (Bkrtcy.D.Colo.1989). The fiduciary relationship is created at the point of insolvency. *In re Xonics, Inc.*, 99 B.R. 870 (Bkrtcy.N.D.Ill.1989); *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784 (Del.Ch. 1992). OMI's creditors can be separated into two categories: (1) creditors existing prior to OMI's insolvency and before the onset of the Defendant's fiduciary duties; and (2) parties becoming creditors after OMI became insolvent and after the onset of the Defendant's fiduciary duties. If allowed to proceed under § 523(a)(4), and assuming this Court determines the Defendant was acting in a fiduciary capacity, any recovery the Trustee would be entitled to would necessarily be distributed in accordance with the scheme of the Bankruptcy Code, pre-insolvency creditors sharing pro rata with postinsolvency creditors, and only after payment of priority claims.

A different result would not necessarily occur, again presuming this Court determined that the Defendant was acting in a fiduciary capacity, if the Trustee had alleged an injury to OMI or a diversion of OMI's assets. If there was an injury to OMI or a diversion of its assets, the damage to the pre-insolvency creditors would have been indistinguishable from that of the post-insolvency creditors existing at the time the fraud or defalcation occurred, and any recovery could be properly shared amongst them. However, a post-fraud or defalcation creditor might not necessarily have a right to share in that recovery. Which leads to the same point made in the previous paragraph. The Trustee must represent all creditors as any recovery must go to all creditors. Yet he is attempting to use a recovery based on the claims of less than all creditors to benefit all creditors.

In any event, the allegations of the Trustee's complaint, as pled, are creditor-specific and cannot withstand the Defendant's motion to dismiss:

> During the unlicensed period, and as a direct and proximate result of defendant's false representations, OMI purchased grain for which it was unable to pay. When OMI failed, the claimants and the Department lost in excess of $1,000,000, and were thereby damaged in that amount.

Damages are measured solely by the unreimbursed losses to the post-insolvency grain creditors and the funds obtained from the Illinois Grain Insurance Fund.

This Court's concerns, noted above in discussing Count 2 brought under § 523(a)(4), were shared by the court in *Feltman v. Prudential Bache Securities*, 122 B.R. 466 (S.D.Fla.1990):

> The complaint alleges that [the debtor sham corporations], with assistance from the Defendants, defrauded investors out of huge sums of money. Clearly, the defrauded creditors would have claims against Prudential–Bache, Commerce-Bank, or Thaw, Gopman [the Defen-

dants] for their role in the fraud against them. To allow the Trustee to sue on behalf of the corporation for the same damages suffered by a specific class of creditors would deprive those creditors of standing to raise those claims. (Citations.) Further, if the Trustee recovered on behalf of the debtors, then the proceeds of the suit would be distributed to all creditors in accordance with the Joint Amended Plan of Reorganization ("the Plan").

The descriptions of the various classes of creditors in the Plan are not sufficiently detailed for this Court to determine precisely how any recovery against the Defendants would be distributed. A distribution among all the creditors, however, clearly raises the possibility that the defrauded creditors would be treated inequitably. Under the Plan, other creditors, such as trade creditors, might receive some of the monies which should in fact recompense the victims of the fraud. To use the debtor corporations as a means of distributing monies recovered from Defendants would be to perpetuate the debtors' role as a vehicle for the principal's fraud, possibly preventing the victims of the fraud from fully recovering their losses. Under these circumstances, the individual creditors rather than the Trustee should seek recovery from third parties.

The court concluded that the Trustee lacked standing and that a general allegation that the debtor corporation was injured as well did not save the complaint. *See also E.F. Hutton & Co. v. Hadley,* 901 F.2d 979 (11th Cir.1990).

The Trustee relies on a case cited by the Defendant, *Geyer v. Ingersoll Publications Co.,* 621 A.2d 784 (Del.Ch.1992), to support his position that a director owes a fiduciary duty for the benefit of creditors upon a corporation's insolvency. In that case, a creditor brought an action against a director and sole shareholder of the corporation, alleging that the defendant had caused the corporation to surrender its major assets to third parties in return for his personal benefit at the expense of the corporation. The court in *Geyer* referred to *Bovay v. H.M. Byllesby & Co.,* 27 Del.Ch. 381, 38 A.2d 808 (S.Ct.1944), an action by bankruptcy trustees [under section 77B of the Bankruptcy Act], to compel the defendants to turnover sums which they unlawfully and fraudulently took from the debtor corporation through the agency of its officers and directors who were named and controlled by the defendants. Those cases, in contrast to the present case, clearly involve an injury to the entire creditor body, not specific creditors.

At the oral argument on the motion to dismiss, the Trustee stated that the heart of his complaint rests on §§ 544, 545 and 551 of the Bankruptcy Code, 11 U.S.C. §§ 544, 545, and 551. His theory is that he can avoid IDA's lien under § 544, and § 545, but preserve the lien for the benefit of the estate under § 551. The obvious deficiency with this argument is that the complaint does not plead § 544, § 545, and § 551 or facts sufficient to bring it within the scope of those sections.

In addition, in order for the theory to prevail, the Trustee would have to be able to avoid IDA's lien and then enforce the lien against the Defendant for the benefit of the estate. But that is not what the Trustee is attempting to do. In the adversary proceeding brought by IDA the Trustee is attempting to avoid IDA's lien. But in this adversary proceeding brought by him against the Defendant he is not attempting to enforce that lien against the Defendant. He is attempting to enforce a separate cause of action on behalf of IDA against the Defendant. IDA has at least two concurrent and independent remedies, one to claim a lien against the grain assets of the estate, the other to pursue the directors of OMI, and the fact that the Trustee may be able to defeat IDA's lien does not impact or give the Trustee the right to pursue the directors on IDA's behalf. The Trustee's attempt to defeat IDA's lien on grain assets in his possession is totally irrelevant to IDA's cause of action against the Defendant.

▋ This Court is well aware that under Rule 8 of the Federal Rules of Civil Proce-

dure that the standard for a complaint is notice pleading which requires

(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

While the complaint is clear that the Trustee is proceeding under § 523, he has not pled sufficient facts to show that he is entitled to relief under that section. At the hearing on the Defendant's motion, the Trustee, in response to the Defendant's position that he lacked standing, proposed to cure any deficiency by adding additional conclusory allegations. This Court is not required to speculate whether the Trustee would be entitled to different relief if different facts had been pled. The complaint as it stands must be dismissed for the reasons stated in this opinion. Should the Trustee elect to file an amended complaint, sufficient facts must be alleged to plead the Trustee's cause of action.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day; IT IS HEREBY ORDERED:

1. That the Defendant's Motion to Dismiss is ALLOWED.

2. That the Plaintiff is given twenty-one (21) days within which to file an amended complaint. If the amended complaint is not filed within twenty-one (21) days, the case will be dismissed with prejudice.

### APPENDIX A

"Grain assets" means all grain owned or stored by said failed grain dealer or failed warehouseman, including grain in transit which was shipped by the failed grain dealer or failed warehouseman and for which payment has not been received; redeposited grain; proceeds from the sale of grain due or to become due; the equity (net of any secured financing directly associated therewith) in assets in commodity exchange grain margin accounts, any monies due or to become due (net of any secured financing directly associated therewith) from any futures contracts on any recognized commodity exchange; any other unencumbered funds or property or equity of the failed grain dealer or warehouseman in funds or property wherever located which can be directly traced as being from the sale of grain by the failed grain dealer or failed warehouseman, provided that any such funds, property, or equity in funds or property, shall not be deemed to be encumbered unless the encumbrance results from good and valuable consideration advanced by any secured party on a bona fide basis, and further provided that said encumbrance is not the result of the taking of such funds, property, or equity in such funds or property as additional collateral for an antecedent debt; or other unencumbered funds, property, or equity in assets.

A statutory lien shall be imposed on all "grain assets" of a grain dealer or warehouseman in favor of claimants, including lenders, possessing warehouse receipts, covering grain owned or stored by the grain dealer or warehouseman; in favor of claimants with written evidence of ownership (other than warehouse receipts) disclosing a storage obligation of a grain dealer or warehouseman, including scale tickets, settlement sheets, and ledger cards; in favor of claimants who have loaned money to a grain dealer or warehouseman and were to receive a warehouse receipt as security for that loan but the grain dealer or warehouseman failed within 21 days after receiving the loan monies and no warehouse receipt was issued; in favor of claimants who have surrendered warehouse receipts as part of a grain sale transaction, the grain dealer or warehouseman failed within 21 days thereafter, and the person surrendering the warehouse receipt did not get fully paid therefor; and in favor of all other claimants who possess written evi-

dence of the sale of grain to a failed grain dealer or failed grain warehouseman, but did not get fully paid therefor.

The aforesaid lien shall secure all claims of claimants described in subparagraphs (a), (b) and (c) below of this paragraph; shall arise at the time of delivery of the grain for sale, at the commencement of the storage obligation, or at the time funds are advanced by the lender; and shall terminate when the liability of the grain dealer or warehouseman to the claimant has been discharged; provided, however, that the priority of each such lien, as among the respective claimants, shall not relate to the date the claim arises but shall be governed solely by the priority rules which are contained in this Section. The statutory lien claims of all claimants shall be deemed to be assigned by operation of this law to the Illinois Department of Agriculture, and in the event of a failure and subsequent liquidation, such lien shall transfer over to assets or proceeds of assets either received or liquidated by the Illinois Department of Agriculture. The Illinois Department of Agriculture shall, in the event of a failure, enforce the aforesaid statutory lien claims and allocate the proceeds thereof as follows: