In re Kevin Eli MARTIN and Sandra Clark MARTIN, Debtors.

Richard E. BARBER, Chapter 7 Trustee for Ostrom–Martin, Inc., Plaintiff,

v.

Kevin Eli MARTIN, Defendant.

Bankruptcy No. 92–82270.
Adv. No. 92–8194.

United States Bankruptcy Court,
C.D. Illinois.

Nov. 30, 1993.

Barry M. Barash, Richard A. Dahl, Barash, Stoerzbach & Henson, Galesburg, IL, for plaintiff.

Charles E. Covey, Covey & Litterst, Ltd., Peoria, IL, for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

OSTROM–MARTIN, INC. (OMI) was a grain dealer. The Defendant was a member of OMI's Board of Directors and its President. OMI was the subject of an involuntary petition in Chapter 7, with OMI consenting to an adjudication. The Defendant filed his own Chapter 7 bankruptcy.

OMI's trustee in bankruptcy filed a five count amended complaint against the Defendant. Count 1 is under § 727(a)(7) of the Bankruptcy Code alleging the Defendant falsified and concealed OMI's records. 11 U.S.C. § 727(a)(7). The next three counts are under § 523 of the Bankruptcy Code, 11 U.S.C. § 523. Count 2 is under § 523(a)(2) alleging Defendant gave a false financial statement to accountants and to the Illinois Department of Agriculture (IDA) which in turn permitted OMI to keep its grain license and buy grain on credit which it could not pay for. Count 3 is under § 523(a)(4) alleging the Defendant's actions with respect to a $300,000.00 check drawn on OMI's account and payable to Rumbold Valley Farms but deposited in the bank account of a corporation in which the Defendant had an interest constituted fraud while in a fiduciary capacity. Count 4 is under § 523(a)(6) and relying on the facts summarized for Count 3, alleged a willful and malicious injury, 11 U.S.C. § 523. Count 5 is brought under 18 U.S.C. 1961, *et seq.,* commonly referred to as RICO. The Defendant filed an answer to count 4, alleging an exercise of his fifth amendment rights and declining to respond because a response may tend to incriminate him. The Defendant also filed a motion to strike certain paragraphs of the common count and to dismiss Counts 1, 2, 3 and 5. It is the motion to strike and to dismiss the amended complaint which is currently before the Court.

Count 1 of the amended complaint is brought under § 727(a)(7) of the Code which denies a discharge to a debtor who, on or within the year preceding the filing of his petition, or at any time during his own case, commits any of the acts specified in paragraphs (2), (3), (4), (5), or (6) of § 727(a), in connection with another case concerning an insider. 11 U.S.C. § 727(a). The complaint does not specify which of the listed provisions is being pursued. Rather, the Trustee alleges that the Defendant, an insider of OMI:

a. Falsified and concealed recorded information, including OMI's books and records, and specifically, the transaction de-

scribed in ¶ 20(A) of the common count (forged endorsement).

b. Falsified OMI's books and records so that its true financial condition could not be ascertained by OMI's independent auditors, McGladrey & Pullen, or by the Illinois Department of Agriculture.

c. On or about November 29, 1991, made a false application to the Illinois Department of Agriculture on OMI's seeking to renew OMI's grain dealer's license when he knew that the application and OMI's financial statement:

    1. Was materially false.

    2. Failed to meet the financial ratios required by the Department in order to renew the grain dealer's license.

■ The Defendant interprets this count of the Trustee's complaint as being brought under § 727(a)(3) which provides that the debtor shall receive a discharge unless:

[T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The Defendant argues that this count must be dismissed because in order to prevail under this provision it must be alleged that he committed acts concerning OMI which prevented the Trustee from determining OMI's true financial condition. Allegations that the Defendant misled other entities are not sufficient to state a claim under § 727(a)(3).

Given the specific allegations of the complaint in paragraph 2 of Count 1, set forth above, this Court agrees with the Defendant that the Trustee is proceeding under § 727(a)(3). The other subsections of § 727(a) obviously have no application. Section 727(a)(2) concerns a transfer, concealment, removal, destruction or mutilation of property by a debtor with the intent to harm or defraud creditors. Section 727(a)(4) involves certain actions by the debtor made in connection with the bankruptcy case, such as

a false oath by the debtor. Section 727(a)(5) may be invoked where the debtor fails to satisfactorily explain a loss or deficiency of assets. A discharge may be denied under § 727(a)(6) if the debtor fails to comply with court orders or refuses to testify by improperly asserting the privilege against self-incrimination.

■ Section 727(a)(3) provides that a debtor will be denied a discharge where

[T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). Discussing the scope of this provision, the court in *Meridian Bank v. Alten*, 958 F.2d 1226 (3rd Cir.1992), stated:

The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *See 4 Collier on Bankruptcy* ¶ 727.–03[1] (15th ed. 1979). The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. Creditors are not required to risk having the debtor withhold or conceal assets "under cover of a chaotic or incomplete set of books or records." [*In re*] *Cox*, 904 F.2d [1399] at 1401 [ (9th Cir.1990) ] (quoting *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir.1953)).

    . . . .

The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must " 'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the

bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'" *In re Decker,* 595 F.2d 185, 187 (3d Cir.1979) (citations omitted).

. . . .

[I]n order to state a prima facie case under section 727(3)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.

This Court agrees with the Defendant that the allegations of the complaint that the Defendant duped OMI's accountants and the Department of Agriculture prior to bankruptcy are insufficient to state a cause of action under § 727(a)(3). While the Trustee will be given an opportunity to amend Count 1 of the complaint, this Court questions whether the Trustee could prevail under this provision. Given the prolific litigation arising from the OMI bankruptcy, it does not appear to this Court that the Trustee is unable to ascertain OMI's present financial condition and prior, material business transactions. To the contrary, it is from OMI's very books and records that the Trustee has uncovered and pieced together what he perceives to be a scheme to deceive and mislead OMI's accountants and the Illinois Department of Agriculture. Whatever recourse OMI's Trustee or OMI's creditors might have against the Defendant, it does not appear to lie under § 727(a)(3).

Count 2 of the complaint is brought under § 523(a)(2) of the Bankruptcy Code and alleges that OMI tendered a false financial statement to its accountants, and based on that statement or representations resulting therefrom, the Illinois Department of Agriculture extended OMI's grain dealer's license. During that time period, OMI purchased grain on credit for which it was later unable to pay. The Defendant contends that Count 2 should be dismissed because it fails to allege a general injury to all of OMI's creditors and the Trustee lacks standing to bring a dischargeability action on behalf of only some of OMI's creditors. In an earlier opinion rendered on May 18, 1993, in a relat-

ed case brought by OMI's Trustee against Ellsworth David Martin, *Barber v. Martin,* 154 B.R. 490 (Bkrtcy.C.D.Ill.1993), this Court held that a trustee had no standing to bring a claim on behalf of only certain creditors of the debtor. In response, OMI's Trustee amended his complaint by adding several allegations of fact to the common count, including allegations of a check-kiting scheme between OMI and several related entities, imprudent loans to related entitles, and sales of stored grain to OMI by related entities made by reason of inside information. The Trustee similarly amended his complaint in the present case, adding certain allegations to the common count. . This Court notes at this point that the Trustee amended this complaint based upon the dismissal of the complaint in the related case. Count 2 of the amended complaint, however, is identical to Count 2 of the original complaint. While it is true that the common count contains additional factual allegations that were not contained in the common count of the original complaint and that Count 2 of the amended complaint contains a general incorporation of the amended common count, the alleged violations of § 523(a)(2) are specific and are the same allegations of alleged violations of § 523(a)(2) found in the original complaint filed by the Trustee in the related case of *Barber v. Martin, supra,* which this Court found deficient. Therefore, Count 2 of the amended complaint must be dismissed for the same reasons that this Court stated in *Barber v. Martin, supra,* and this Court will not repeat those reasons here.

Count 3 of the amended complaint is brought under § 523(a)(4), which provides that a debtor is not discharged from any debt for fraud or defalcation while acting in fiduciary capacity, or for embezzlement or larceny. The Defendant argues that this count should be dismissed because the Defendant, as a corporate director, is not a fiduciary within the meaning of § 523(a)(4), relying on this Court's earlier decision in *Barber v. Martin, supra.* In that decision, this Court noted that courts were divided upon the issue of whether a corporate director is a fiduciary for purposes of § 523(a)(4), but did not decide the issue because the Trustee was at-

tempting to obtain a recovery based on the claims of less than all creditors to benefit each and every creditor of the bankruptcy estate.

■ In addition to the allegations which this Court seemed insufficient to allege a cause of action under § 523(a)(4) in *Barber v. Martin, supra,* the Trustee makes the following allegations in Count 3 of the amended complaint regarding a diversion of corporate funds. The Trustee alleges that the Defendant

1. Paid or caused OMI to pay or transfer large sums to defendant's related entities (i.e. entities in which the defendant had a significant and ownership control interest) and insiders, including:

Agri–Facilities Land Trust

Martin Farms Partnership

Martin Fertilizer

Martin Farms of Princeville, Inc.

2. Attempted, without consideration or authority of OMI's board of directors, to cause OMI to forgive a debt of $170,000 owed to OMI by Dell's Home Center, Inc., and guaranteed by Donald Dell, David Dell, and Steven Dell. The Dell's note now appears to be substantially uncollectible and the guarantors appear to be unable to meet their guaranty in full, thereby causing a loss to OMI in excess of $100,-000.

Those allegations, taken as true for purposes of the motion to dismiss, give rise to an action properly brought by the Trustee. A trustee of a corporate debtor is the proper party to bring an action against directors and stockholders for mismanagement, misappropriation of assets or breach of fiduciary duty. *Koch Refining v. Farmers Union Cent. Exch.,* 56 B.R. 242 (N.D.Ill.1985), *aff'd,* sub nom., 831 F.2d 1339 (7th Cir.1987). Thus, this Court must determine whether the Defendant, as director of OMI, is a fiduciary within the meaning of § 523(a)(4).

■ As this Court noted in its prior opinion, it has declined, on prior occasions, to depart from the narrower interpretation of § 523(a)(4), which requires proof of a technical or express trust. This Court approves of and follows the reasoning of Judge Stephen Covey in *In re Hutton,* 117 B.R. 1009 (Bkrtcy.N.D.Okla.1990). The Trustee argues that a different result should occur in the present case, given the Defendant's high degree of involvement in the fraudulent scheme. In this Court's view, however, the determination of whether a corporate director is a fiduciary under § 523(a)(4) does not turn on whether the defendant was a mastermind or simply a passive observant. The Trustee asserts that the Defendant's fiduciary obligation to OMI's creditors arose upon OMI's insolvency. This Court agrees with Judge Scholl's comments in two recent decisions where he strongly criticized those decisions holding that the relationship between the principal of an insolvent corporation vis-a-vis the corporation's creditors is an express trust relationship for purposes of § 523(a)(4):

Assuming that the director of a corporation in liquidation may be a liquidating trustee for purposes of § 523(a)(4), the difficulty with finding that the relationship of the director of a corporation to its creditors automatically gives rise to an express trust of all assets held by that corporation for purposes of § 523(a)(4) broadens the scope of that provision to embrace a debtor/creditor relationship. Such an extension of § 523(a)(4) is, in our view, a stretch of § 523(a)(4) beyond the purposes for which it was intended. Moreover, as we indicated in our quotation in the Memo, slip op. at *1, from our decision in a companion case to [*In re*] *Bagel* [1992 WL 477052], *In re Cocivera, USA v. Cocivera,* Bank. No. 92–12042S, Adversary No. 92–0739S, 1992 WL 560937, we question the result in *Bagel,* noting that the indebtednesses to the creditors may be found not to predate the purported fiduciary relationship in this situation. Therefore the trust relationship which arises from a corporate liquidation appears likened to a trust ex maleficio, which arises out of the very action which creates the alleged fiduciary relationship.

*In re Kaplan,* 162 B.R. 684 (E.D.Pa.1993). Therefore, there was no fiduciary relationship between Defendant as corporate director and the creditors of OMI.

In Count 5, the RICO count, OMI's trustee alleges the Defendant's actions which form the basis of Counts 1 through 4 also constitute violations of RICO. The Trustee seeks a judgment against the Defendant for treble damages, attorney's fees and pre-judgment interest, as well as a determination that the judgment is nondischargeable. As to this count, the Defendant's motion to dismiss takes the position this count does not attempt to state a cause of action under either § 523 or § 727 and violates the automatic stay of § 362 of the Bankruptcy Code, 11 U.S.C. § 362. Because OMI's trustee pled both an alleged RICO violation with a non-dischargeability request in the same count, which led the Defendant to allege in his motion to dismiss a violation of the automatic stay, this Court must first address non controlling issues, prior to addressing the two reasons why Count 5 should be dismissed.

Section 362 makes the automatic stay applicable to all "entities". That term is defined by § 101(15) of the Bankruptcy Code to include "person, estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101(15). OMI's trustee falls within that definition. Section 362(a)(1) stays the commencement of a judicial action against a debtor that could have been brought prior to the filing of the bankruptcy. A RICO action against the Defendant falls within that classification. Under § 362(c)(2) the automatic stay continues until the earliest of the time the case is closed, the case is dismissed, or the time the discharge is granted or denied. None of these events have occurred.

Section 362(d) provides for relief from the automatic stay by terminating, annulling, modification, or conditioning of the automatic stay. OMI's trustee has not requested any such relief.

■ Citing *In re AMS Realty, Inc.,* 114 B.R. 229, 233 (Bkrtcy.C.D.Cal.1990), OMI's trustee argues the protection of § 362 does not extend to an action brought by a Chapter 7 trustee.[1] The court in that case makes such a statement, but OMI's trustee takes it out of context. Section 362 does not prevent a debtor's Chapter 7 trustee from bringing an action against a third party not in bankruptcy. But it does prevent a Chapter 7 trustee for a third party from bringing an action against a debtor in bankruptcy who has the protection of § 362.

■ OMI's trustee also argues that the purpose of the automatic stay is to protect the assets of the debtor. The trustee asserts that because the action in this case is not attempting to deplete the assets of the estate the automatic stay should not apply. It is true that the automatic stay serves to protect the assets of the bankruptcy estate, but that stops short of stating the full purpose of the automatic stay. One of the fundamental purposes of the automatic stay in a Chapter 7 case is to protect the debtor against actions by his creditors. *In re Penn–Dixie Industries, Inc.,* 6 B.R. 832 (Bkrtcy.S.D.N.Y.1980). Unless relief from the stay is granted by the court, the stay continues in effect until the debtor is denied a discharge. *In re Walker,* 7 B.R. 216 (Bkrtcy.D.Rhode Island 1980). If the debtor is granted a discharge, the permanent injunction of § 524 replaces the automatic stay of § 362 and prevents creditors from ever collecting a discharged debt. The Trustee here is putting the cart along side the horse. He argues that he is entitled to proceed with the RICO action against the Debtor because the Debtor's discharge might just be denied. Under the scheme of the Bankruptcy Code, if the Debtor's discharge is denied then the Trustee is free to pursue this action against the Debtor, and not before.

■ Next, OMI's trustee, relying on *In re North Coast Village, Ltd.,* 135 B.R. 641 (9th Cir. BAP 1992), and the cases cited therein, argues § 362 does not apply to adversary proceedings commenced against a debtor in the bankruptcy court where the debtor's

---

**1.** Count 5 of the amended complaint is similar to Count 5 of the original complaint which the Defendant also sought to dismiss for the same reason. A hearing on the original motion to dismiss was held and the TRUSTEE made this argument. The motion was taken under advisement, and while under advisement, the amended complaint and motion to dismiss it, were filed. The same argument is applicable to the amended complaint and motion to dismiss.

bankruptcy is pending. In these cases the courts make two basic points. The first is that application of the stay in such a situation is illogical and would not serve the purposes underlying the stay. Therefore, even though there is no specific exception found in § 362, it is implicit the stay is not applicable where litigation is commenced in the court with jurisdiction over the bankrupt. The second is that the bankruptcy court can control the litigation if its continuation is unreasonably burdensome or economically unwarranted given the status of the bankruptcy case.

Those cases involved core proceedings. 28 U.S.C. § 157 provides that core proceedings include, but are not limited to—

    (A) matters concerning the administration of the estate;

    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

    . . . .

    (K) determinations of the validity, extent, or priority of liens;

    . . . .

    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

In *In re North Coast Village, Ltd., supra*, the creditor asserted that agreements entered into to resolve a dispute required the debtor to convey to it certain property and to deliver a modified land note into escrow, and that the debtor had failed or refused to do so. The prayer for relief was for specific performance and declaratory relief. Although not stated in the opinion, the action was a core proceeding under § 157(b)(2)(O).

In *In re Atreus Enterprises, Ltd.*, 120 B.R. 341 (Bkrtcy.S.D.N.Y.1990), the creditor and the debtor had entered into a joint venture agreement to acquire, subdivide, and sell certain real estate, and the creditor commenced his adversary proceeding for a declaratory judgment determining the parties' interest in the unimproved real estate, and for leave for it to exercise a power of attorney previously executed by the debtor authorizing the plaintiff to convey to itself the property in question. Again, the court does not discuss whether the case is a core proceeding, but it was under § 157(b)(2)(O).

In *In re Washington Mfg. Co.*, 118 B.R. 555 (Bkrtcy.M.D.Tenn.1990) the creditor filed its complaint seeking a declaratory judgment that its secured claim against the debtor be allowed, that interest and expenses be allowed, and that its secured claim is secured by a first priority, perfected, enforceable and non-avoidable pre-petition lien and post-petition lien. An action under § 157(b)(2)(B) and (K). In *In re American Sports Innovations ASI*, 105 B.R. 614 (Bkrtcy.W.D.Wash.1989), the court begins its opinion by recognizing the matter was a core proceeding under § 157(b)(2)(A), (K), and (O). In *In re American Spinning Mills, Inc.*, 43 B.R. 365 (Bkrtcy.1984), the debtor sued the defendant who counterclaimed without first having the stay lifted, an action coming within the scope of § 157(b)(2)(O).

This Court agrees with the holdings and reasoning of those cases. In those cases the courts are holding that the determination of the amounts of claims, secured status of claim holders, the dischargeability of claims, and a debtor's right to a discharge are core proceedings which need to be resolved in order to administer the bankruptcy estate. It is the very business of the Bankruptcy Court and the drawing of those matters before the Bankruptcy Court in which the bankruptcy is pending can hardly be considered "violations of the automatic stay."

However, this Court is not convinced that the holdings and reasoning of those cases are applicable to a non core matter. If Count 5 was solely a RICO action, strong arguments could be made for application of the stay. A RICO action can be brought in either the Federal District Court or in the State Court. If filed in either of those two courts, relief from the stay would have to be first obtained.

Another of the purposes of the stay not yet referenced is to provide the debtor with a breathing spell by stopping collection efforts by creditors. It follows that if the debtor would be given a breathing spell in the Federal District Court, this Court, being a part of that court, should afford the debtor the same protection. Under § 362 the onus for removing the stay prior to filing suit is with the creditor. The debtor is not collared with the responsibility for seeking protection, i.e. by requesting a delay, etc. after suit is filed. Section 362 protects a debtor by requiring a creditor to first show there is a reason why the stay should be lifted, not by permitting a debtor to seek protection after it is filed.

Closely tied to the point just made is that this Court would not hear a RICO action. A demand for a jury trial could be made which would result in a RICO action being transferred to the District Court, which would honor the stay. Even if such a demand is not made, the District Court would hear a RICO action. The Seventh Circuit Court of Appeals has continuously reminded the lower courts of their obligation to inquire on their own as to their jurisdiction to hear a matter. *Matter of Kubly*, 818 F.2d 643 (7th Cir.1987). Furthermore, in *Barnett v. Stern*, 909 F.2d 973 (7th Cir.1990), the court, in considering whether a Chapter 7 Trustee's RICO action against a non-debtor, was a core or non-core proceeding, the court said:

> Although we need not decide the matter definitively, we note that, even assuming that [the Trustee's] claim did invoke substantive rights under title 11, any conclusion that the RICO claim could have been litigated in the bankruptcy proceedings might be precluded by 28 U.S.C. § 157(d). Under this "withdrawal of reference" provision, if the resolution of a proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," (e.g. RICO), the district court *must* withdraw such a proceeding from the bankruptcy court upon the motion of a party. *See, e.g., Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 730–31 (D.Kan.1986) (discussing divergent approaches to withdrawal of reference under § 157(d) and withdrawing an adver-

sary proceeding that involved RICO and anti-trust claims); *In re Hartley*, 55 B.R. 781, 784 (Bankr.N.D.Ohio 1985) (bankruptcy court *sua sponte* determined that trustee's RICO claims against debtor and creditor required withdrawal under § 157(d)). *But cf. In re Adelphi Inst., Inc.*, 112 B.R. 534, 536 (S.D.N.Y.1990) (espousing a seemingly narrower view of the withdrawal requirement). *See generally* 1 Collier on Bankruptcy ¶ 3.01(e) at 3–64 to –67 (1990).

While the facts of that case are different from the facts of this case in that the RICO action was brought against a non-debtor, the court's statement concerning required withdrawal of a RICO action is applicable. To follow the approach taken in the cases cited by OMI's Trustee would permit him to avoid the effect of the stay by merely filing in the wrong court, knowing it will be transferred to the proper court.

However, Count 5 is not solely a RICO action. In Count 5 OMI's trustee asks for a determination of nondischargeability and alleges a RICO violation. The factual underpinnings alleged for Count 5 are the same as for the other four counts. Count 5 merely seeks a different remedy. OMI's trustee's purpose in adding Count 5 is to obtain treble damages and attorney fees under RICO. What OMI's trustee is attempting to do is to obtain a determination of nondischargeability, which is a core proceeding under § 157(b), and a cumulative remedy of treble damages and attorney fees. Several points flow from the fact Count 5 involves a core proceeding to determine the dischargeability of a debt. First, the holding in the cases cited by OMI's trustee would be applicable. Second, the action would not be subject to withdrawal as it is a core proceeding, and the Defendant is not entitled to a jury trial on Count 5 as a jury trial is not authorized in a dischargeability action. *See Matter of Hallahan*, 936 F.2d 1496 (7th Cir.1991).

▮ Third, which is the first of the two reasons why Count 5 should be dismissed, OMI's trustee must proceed under § 523 which is his sole remedy. In *In re Nemovitz*, 142 B.R. 472 (Bkrtcy.M.D.Fla.1992) Judge

Alexander Paskay dismissed a RICO count in a Chapter 7 dischargeability complaint:

> The Debtor also contends that Count V should be dismissed because it seeks a determination that a debt owing by the Debtor to the Plaintiff should be determined to be nondischargeable as certain acts of the Debtor allegedly were in violation of RICO (sic). As a threshold matter, it should be noted that all actions seeking a determination of nondischargeability of a debt must stand or fall on the provisions of § 523 of the Bankruptcy Code. As there is no provision in § 523 specifically excepting debts arising from RICO violations from the debtor's overall discharge, this Count of the Complaint is without merit.

OMI's trustee may have had a RICO action against the Defendant prior to the filing of his Chapter 7 case, but once the Chapter 7 case was filed, OMI's trustee was left with two remedies, actions under § 523 or § 727. The Trustee sought these remedies in the other counts of his complaint. Therefore, even though the filing of Count 5 does not violate the automatic stay, it should be dismissed. To date, his counts under § 523 and § 727 have been dismissed. Should he ultimately be able to plead causes of action under those sections, and prevail, he will be free to pursue the defendant for RICO violations in an appropriate forum of his choice.

■ There is yet a second reason why Count 5 should be dismissed. That is for the same reasons Count 2 is being dismissed based on this Court's decision in *Barber v. Martin*, 154 B.R. 490 (Bkrtcy.C.D.Ill.1993), holding that a bankruptcy trustee cannot bring an action on behalf of individual creditors, but must bring it on behalf of all creditors. OMI's Trustee is bringing this RICO action primarily on behalf of the IDA and the grain producers. Again, notwithstanding the incorporation of the allegations of the common count into Count 5, OMI's Trustee is bringing this RICO action primarily on behalf of the IDA and the grain producers. In *Zimmerman v. Duggan*, 86 B.R. 47 (E.D.Pa. 1988), the court held:

> Defendants claim that plaintiff has improperly asserted a RICO claim on behalf of AEC's shareholders and creditors. While it is true that shareholders and creditors' rights are merely derivative of [the debtor's] rights, [the debtor] clearly has standing to assert a RICO claim on its own behalf for harm done to the corporation itself. (Citation). Similarly, [the debtor's] trustee has standing to pursue the remaining claims on behalf of the corporation. The trustee stands in the shoes of [the debtor] and has a right to bring whatever actions the [debtor] could bring on its own behalf. (Citation). While a trustee may not raise a shareholder's or creditor's claim directly, (Citations), suits brought on behalf of the corporation invariably benefit the bankrupt's entire community of interests—including shareholders and creditors. (Citation.)

This distinction between damages suffered by the debtor/corporation vs. damages suffered by an individual creditor was also discussed by the court in *Ocean Energy II v. Alexander & Alexander, Inc.*, 868 F.2d 740 (5th Cir.1989). Count 5 of OMI's trustee's first amended complaint, as well as Count 2, fail here as he has alleged injuries to specific creditors that he cannot individually represent.

Lastly, the Defendant moves to strike certain paragraphs of the "common count" of the complaint, namely 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20(A), 20(B), 20(C), 20(D), and 22, because those paragraphs relate to only some of OMI's creditors, and not all of the creditors. Because of the decision this Court reaches here in granting the Defendant's motion to dismiss Counts 1, 2, 3 and 5, this Court will strike all of the paragraphs of the common count listed above with the exception of paragraph 20. The Defendant has answered Count 4 of the first amended complaint, which alleges that the Defendant's conduct alleged in that paragraph violates § 523(a)(6) of the Bankruptcy Code.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in the Opinion entered this day; IT IS HEREBY OR-DERED:

1. That the Defendant's Motion to Dismiss Counts 1, 2, 3 and 5 of the first amended complaint is hereby GRANTED and those counts of the Complaint are dismissed.

2. That the following paragraphs of the common count of the Complaint are stricken, namely: 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20(A), 20(B), 20(C), 20(D), and 22.

3. That the Trustee is hereby given ten (10) days to file an amended complaint. If an amended complaint is filed, the Defendant is given fourteen (14) days within which to file an answer or otherwise plead.