**In re Joseph Roy BRUNING and Paula Fay Bruning, Debtors.**

**Joseph F. BERRES, Plaintiff–Appellant,**

**v.**

**Joseph Roy BRUNING and Paula Fay Bruning, Defendants–Appellees.**

No. 92–K–109.
Bankruptcy No. 91–14637 DEC.
Adv. No. 91–1531 CEM.

United States District Court,
D. Colorado.

July 22, 1992.

Gregory A. Jamison, Brown & Berardini, Denver, Colo., for plaintiff-appellant.

James C. Bull, Bucholtz, Bull & Ewing, Denver, Colo., for defendants-appellees.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

### I. *Introduction*

This case is before me on Joseph Berres' ("creditor") interlocutory appeal from an order of the bankruptcy court dismissing his complaint to determine dischargeability. Count 1 of the complaint alleged that the debtors committed fraud in a fiduciary capacity and that the obligation was not dischargeable under 11 U.S.C. § 523(a)(4).[1] The bankruptcy court granted the Brunings' ("debtors") motion to dismiss on December 27, 1991. It found that the creditor had not alleged facts sufficient to establish an express or technical trust relationship between the debtors and himself. As such, the fiduciary relationship was the result of a constructive trust and the debtors were merely trustees *ex maleficio*. The bankruptcy court dismissed count 1 of the complaint because such a relationship is not within the scope of 11 U.S.C. § 523(a)(4). I granted the creditor's motion for leave to appeal and stayed the proceedings below on March 19, 1992. I heard oral argument on July 15, 1992, and am now prepared to rule.

For the reasons discussed below, I determine that a common law fiduciary relationship arises between a director and an insolvent corporation's creditors at the moment of insolvency. Such a relationship creates a technical trust within the meaning of 11 U.S.C. § 523(a)(4). As such, fiduciary capacity under 11 U.S.C. § 523(a)(4) exists even in the absence of an express trust so long as the fiduciary relationship arises before the defalcation upon which the claim

is based. I accordingly reverse the bankruptcy court's decision.

### II. *Facts and Procedural History*

The pertinent facts, as found by the bankruptcy court and as alleged in the complaint, are as follows. Creditor worked for Bruning and Associates, a Delaware corporation, from March, 1988 until July 19, 1990 as a sales broker. His employment contract promised him a 50% share of any commission the corporation earned as a result of his efforts. The debtors were both officers and directors of Bruning and Associates.[2] On July 13, 1990 the creditor closed the sale of NYNEX Paging Corporation to PageAmerica Communications, Inc. for a sales price in excess of $37 million. The debtors received a commission of $372,401.73, but refused to pay the creditor his 50% share. Instead, they diverted the entire commission to themselves and to Sterling Communications, another corporate entity they also controlled. Bruning and Associates became insolvent by the transfer of the commission to the debtors and Sterling Communications.[3]

On April 10, 1991 the debtors filed a petition under chapter 7 naming Berres as an unsecured creditor. He filed a complaint to determine dischargeability on July 11, 1991. The bankruptcy court granted the debtors' motion to dismiss under Fed. R.Civ.P. 12 on December 27, 1991. It found as a matter of law that the trust relationship between creditor and debtor was equitable in nature, the result of a constructive trust imposed as a remedy for wrongdoing. This appeal followed.

The bankruptcy court accepted that 11 U.S.C. § 523(a)(4) requires a trust imposed by law not one implied by law. It also recognized that § 523(a)(4) only applies to "express or technical trusts" which existed before the creation of the debt in contro-

---

1. 11 U.S.C. § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity...."

2. The complaint also alleges that Bruning and Associates was the alter ego of the Brunings individually, thus subjecting them to personal

liability for the corporation's acts. I accept this allegation as true for purposes of this appeal.

3. The debtor's first amended complaint, filed January 16, 1992, alleged that the corporation was insolvent before it received the brokerage commission.

versy. It does not apply to constructive or equitable trusts. The bankruptcy court also determined that Colorado common law creates a fiduciary relationship between the officers and directors of an insolvent corporation and its creditors. It concluded, however, that such a fiduciary relationship and trust arises only by presumption of law as a response to the director's wrongdoing. It thus found it to be tantamount to a constructive trust. It concluded that the debtors were merely trustees *ex maleficio* and that the debt was dischargeable. Alternatively, the bankruptcy court dismissed because the complaint did not allege that the debt arose before the creation of the fiduciary relationship. The creditor cured this latter pleading defect, if it be one, by filing an amended complaint on January 16, 1992.

### III. *Discussion*

■ I must decide whether a director's fiduciary obligation at common law to an insolvent corporation's creditors arises from an express or technical trust within the meaning of 11 U.S.C. § 523(a)(4). That "fiduciary capacity" within the meaning of 11 U.S.C. § 523(a)(4) requires an express or technical trust is not in dispute. As the Supreme Court noted more than fifty years ago,

> The meaning of these words has been fixed by judicial construction for very nearly a century.... [T]he statute "speaks of technical trusts, and not those which the law implies from the contract." ... It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto ... "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created."

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934) (citations omitted). I understand *Davis* to create three categories of trust relationships within the meaning of 11 U.S.C. § 523(a)(4): express trusts, technical

trusts, and constructive trusts. Only the first two satisfy 11 U.S.C. § 523(a)(4).

Colorado common law has long recognized a director's fiduciary obligation to creditors when the corporation becomes insolvent. *See Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 561 P.2d 367 (1977); *Crowley v. Green*, 148 Colo. 142, 365 P.2d 230 (Colo. 1961). In *Rosebud*, the court of appeals said that

> [d]irectors of an insolvent corporation are deemed to be trustees for the legal entity and for its creditors. As such, they owe a duty to the creditors of their own corporation not to divest corporate property for their own benefit and therefore defeat a corporate creditor's claim.

561 P.2d at 372. The *Rosebud* court did not however, determine whether the resultant trust relationship was express, technical or constructive. That issue is one to be determined by federal law. *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986). At least one other Colorado bankruptcy court has followed *Rosebud* and concluded that Colorado's common law fiduciary duty is sufficient to invoke 11 U.S.C. § 523(a)(4). *In re Thorsen and Co.*, 98 B.R. 527 (Bankr. D.Colo.1989). There, Judge Clark determined that a director's relationship to creditors of an insolvent corporation was the result of a technical trust that was not "created in response to some wrongdoing." *Thorsen*, 98 B.R. at 529.

In a similar vein, Judge Babcock recently found a technical trust arising from the relationship between two partners in a business enterprise. *In re Schwenn*, 126 B.R. 351 (D.Colo.1991). There, he concluded that fiduciary capacity under 11 U.S.C. § 523(a)(4) includes both an express trustee and also one who is made a trustee by law based on the parties' relationship. 126 B.R. at 352. The court went on to say that Colorado common law imposes on partners a technical trust and thus concluded that the misappropriation of the joint venture profits was a defalcation while acting in a fiduciary capacity. 126 B.R. at 353.

I find additional support for my interpretation in the circuit's decision in *In re Romero*, 535 F.2d 618 (10th Cir.1976).

There the court found a technical trust arising by operation of law from a statutory scheme that imposed a fiduciary duty upon contractors who "have been advanced money pursuant to construction contracts." 535 F.2d at 621. None of these opinions, however, clarified the significance and meaning of "technical trust." To do that requires me to look more closely at the Supreme Court's early decisions in this area, particularly *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844), and *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

In *Chapman*, the Court refused to find an 11 U.S.C. § 523(a)(4) violation in a factor's embezzlement of the principal's 150 bales of cotton. It warned against an overly broad interpretation of the exception.

> If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate.

43 U.S. at 208. *Chapman* thus teaches that 11 U.S.C. § 523(a)(4) does not extend to cases where, in equity, a constructive trust is imposed as a remedy for a wrong done.

In *Davis v. Aetna Acceptance Co.*, the bankrupt borrowed money from the creditor to finance the purchase of cars for his auto dealership, 293 U.S. at 330, 55 S.Ct. at 152. Upon receipt of a particular automobile, the debtor gave the creditor a promissory note, a chattel mortgage, a trust receipt, and a bill of sale. *Id.* After he sold the cars in question, however, the debtor did not repay the creditor. Instead, he sought protection in the bankruptcy court. Notwithstanding the so-called trust document, the Supreme Court reversed the state court's determination that there was any 11 U.S.C. § 523(a)(4) fiduciary capacity in the dealer and creditor's relationship. It reasoned that there was no fiduciary capacity because the fiduciary relationship arose out of the very act of wrongdoing and did not arise before the wrong and without reference to it. *Id.* at 333, 55 S.Ct. at 153. It saw the relationship as one merely between mortgagor and mortgagee and therefore allowed the debt to be discharged.

*Davis* thus teaches that 11 U.S.C. § 523(a)(4) fiduciary capacity includes both express trusts and also technical trusts, that is, those trusts which arise by law before any wrongdoing, but not involving a traditional declaration of trust, a clearly defined trust, and an intent to create a trust relationship.

The common law trust obligation a director owes to an insolvent corporation's creditors is clearly not the result of an express trust. The critical inquiry thus becomes whether the fiduciary obligation arose chronologically before the wrongdoing or as a result of the wrongdoing. I hold that it arises upon insolvency, not in response to the director's later wrongdoing, and thus falls squarely within 11 U.S.C. § 523(a)(4)'s ambit. I thus conclude that the creditor's first amended complaint states a claim for relief under Fed.R.Civ.P. 12, since it alleges both the fiduciary relationship and that the corporation was insolvent before the debtors' alleged defalcation.

The judgment of the bankruptcy court is accordingly reversed. The case is remanded for further proceedings consistent with the rule expressed herein.