**In re Joseph CARRETTA, Debtor.**

**MERCEDES–BENZ CREDIT CORPORATION**

v.

**Joseph F. CARRETTA and Carretta Trucking, Inc. and Corestates Bank, N.A., Defendants.**

**Bankruptcy No. 97–20465.
Adversary No. 97–2303.**

United States Bankruptcy Court,
D. New Jersey.

March 17, 1998.

Timothy R. Greiner, Greiner & Langer, Parsippany, NJ, for Mercedes–Benz Credit Corporation.

Peter A. Pizzani, Jr., Okin, Hollander & Deluca, L.L.P., Fort Lee, NJ, for Joseph F. Carretta.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Presently before the Court is a motion by the Debtor/Defendant Joseph F. Carretta to dismiss the first Count of the Plaintiff, Mercedes Benz Credit Corporation's, Amended Complaint for failure to state a claim upon which relief can be granted. Plaintiff opposes Debtor/Defendant's Motion to Dismiss the first Count of Plaintiff's amended complaint, and requests a determination that the Debtor/Defendant's obligations to Plaintiff are non-dischargeable pursuant to § 523(a)(4). A hearing was conducted on February 19, 1998. The following constitutes this Court's findings of fact and conclusions of law.

## FACTS

Mercedes–Benz Credit Corporation ("MBCC") is a Delaware Corporation with its principle place of business in Norwalk, Connecticut. Carretta Trucking, Inc. ("CTI") is a New Jersey Corporation with its principle place of business in Paramus, New Jersey. The Debtor/Defendant, Joseph F. Carretta ("Carretta"), is an individual who resides in Teaneck, New Jersey and who is the sole officer and share holder of CTI.

Commencing in May of 1990 CTI leased 204 freight liner tractors from North Jersey Truck Center, Inc. ("NJTC") (the "Equipment Lease"). NJTC assigned its rights under the Equipment Lease to MBCC. Thereafter, CTI defaulted on the Equipment Lease.

On November 5, 1992 CTI filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey (Case No. 92–29015). On or about November 16, 1992 MBCC filed an adversary proceeding with respect to its rights under the Equipment Lease.

MBCC and CTI reached a Settlement Agreement (the "First Settlement Agreement") on July 27, 1993, which included a modification of the Equipment Lease. On August 24, 1993 CTI's reorganization plan was confirmed by the court. As of February 23, 1994, however, CTI was in default of the First Settlement Agreement and the Equipment Lease as modified.

On or about June 7, 1994, MBCC and CTI executed a new Settlement Agreement (the "Second Settlement Agreement"). The Second Settlement Agreement required CTI to deliver and execute a promissory note (the "Note") in the amount of $200,000 and to pay all of plaintiff, MBCC's, costs and expenses including interest, penalties and attorneys fees incurred in recovering CTI's obligation. The Second Settlement Agreement also provided to secure payment of CTI's obligation that upon request CTI was to execute and

deliver to MBCC mortgages on six parcels of real property owned by CTI and/or held by Carretta, including three properties in Texas, one in California, one in Georgia, and one in Illinois. According to the Complaint, MBCC was also to be given a priority lien.

It is alleged here that on August 8,1994 Carretta incorporated Load To Ride, Inc. ("LTR"). Carretta is the sole shareholder, officer, and director of LTR. It is alleged here that CTI became insolvent as of not later than August 8, 1994 in that, among other things, CTI was not able to meet its pecuniary obligations as they matured by either available assets or the honest use of credit. It is further alleged that in December of 1994 Carretta, for his own benefit and gain, abandoned CTI and began to do business as LTR. LTR allegedly used the good will, customer lists, furniture, fixtures, equipment, proprietary computer software, inventories, leasehold improvements, trade names and trademarks of CTI. CTI and LTR allegedly have continuity of ownership, management, employees, location, customers and general business operations.

On June 7, 1995 CTI failed to make its first payment due MBCC under the Second Settlement Agreement. On December 26, 1995 MBCC filed an action against both CTI and LTR in the Morris County Superior Court Law Division for the sum due from CTI on the note under the Second Settlement Agreement.

On October 11, 1996 MBCC was granted partial Summary Judgment by order of the Superior Court of New Jersey in the amount of $314,821.92, which included $200,000 from the Note and the Second Settlement Agreement, plus unpaid interest at the contract rates to October 11, 1996 in the amount of $48,821.91 and fees and costs, including attorney's fees of $50,000, plus taxed costs.

On January 16, 1997 Joseph Carretta filed a Chapter 11 petition automatically staying MBCC's prosecution of its claim against Carretta in the State Action. On April 24, 1997, the present Complaint was filed. On May 12, 1997 MBCC amended its adversary complaint. Included as Count One is a request for a determination the Carretta's obligations to MBCC are non-dischargeable pursuant to

11 U.S.C.A. § 523(a)(4). Since the filing of the present motion MBCC, on January 26, 1998, filed a Second Amended Complaint, adding Corestates Bank, N.A. as a party defendant.

On October 15, 1997 this Court entered an order that provided in relevant part:

Effective as of September 8, 1997, the Property [405 West 194th Street, Glenwood, Illinois] shall be deemed to have been transferred to CTI, and MBCC's Judgement against CTI in the amount of $314, 821.91, filed October 11, 1996 in the Superior Court of New Jersey . . . , shall attach to the Property as of September 8, 1997 . . .

Debtor/Defendant now seeks to have the First Count of the Plaintiff's Amended Complaint dismissed.

### LEGAL ANALYSIS

#### A. Legal Standard for Motion to Dismiss

The Debtor/Defendant moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is applicable to all bankruptcy proceedings pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure. Rule 12(b)(6) provides that a motion to dismiss a complaint may be filed for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss, the court must accept as true all allegations in the complaint and all reasonable inferences drawn from those allegations, and view them in light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404, 416–17 (1969); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). Accordingly, a complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957); *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 175 (3d Cir.1988).

**B. The Amended complaint and § 523(a)(4)**

The Debtor/Defendant requests that this Court dismiss the first Count of the Plaintiff's amended complaint. The Plaintiff's amended complaint alleges that the Debtor/Defendant's obligations to MBCC are non-dischargeable under 11 U.S.C.A. § 523(a)(4). Section 523(a)(4) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . .

11 U.S.C.A. § 523(a)(4).

MBCC alleges that upon CTI's insolvency, Carretta owed a fiduciary duty to CTI's creditors which he breached by misappropriating assets of CTI for the use and benefit of another corporation that he controlled. MBCC asserts that this constitutes a defalcation by a fiduciary under § 523(a)(4), which makes Carretta personally liable for the indebtedness of CTI to MBCC and makes the debt non-dischargeable.

**C. Debtor/Defendant's Motion to Dismiss**

*i. Defining Fiduciary*

Debtor/Defendant claims that he did not have a fiduciary relationship with Plaintiff within in the meaning of § 523(a)(4). The Debtor/Defendant asserts that the meaning of the term fiduciary as used in § 523(a)(4) is a question of federal law. *In re Kaczynski*, 188 B.R. 770, 773 (Bankr.D.N.J.1995) (citing *In re Rausch*, 49 B.R. 562, 563 (Bankr.D.N.J. 1985)). In determining whether a fiduciary relationship exists for purposes of § 523, the Debtor/Defendant asserts that the court is required to analyze applicable state law to determine whether under state law the relationship between the debtor and the third party meet the criteria for establishing a fiduciary relationship under federal law. *See Kaczynski*, 188 B.R. at 773.

*2. New Jersey's Definition of Fiduciary*

The Debtor/Defendant in establishing a definition of "fiduciary" points to *In re Kaczynski*, 188 B.R. 770, 773–74 (Bankr.D.N.J. 1995) and cites the following:

The traditional definition of "fiduciary" involving a relationship of confidence, trust and good faith, is too broad for the purposes of bankruptcy law. *Matter of Rausch*, 49 B.R. 562, 564 (Bankr.D.N.J. 1985) (citation omitted). Rather the meaning of "fiduciary" for purposes of Bankruptcy Code section 523(a)(4) is limited to instances involving **express or technical trusts.** *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 207, 11 L.Ed. 236 (1844); *Davis v. Aetna*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). Moreover, the trustee's duties must be independent of any contractual obligation between the parties and must be imposed prior to, rather than by virtue of, any claim of misappropriation. *Davis v. Aetna*, 293 U.S. at 333, 55 S.Ct. at 154; . . . Accordingly, implied or constructive trusts and trusts ex malaficio are not deemed to impose fiduciary relationships under the Bankruptcy Code. *Matter of Angelle*, 610 F.2d [1335] at 1339 [(5th Cir.1980)]. The reason for this narrow interpretation is to promote the Bankruptcy Code's "fresh start" policy.

*Id.* (emphasis added).

Debtor/Defendant also cites to *In re Shervin*, 112 B.R. 724, (Bankr.E.D.Pa.1990) to demonstrate the interpretation of § 523(a)(4) as "construed liberally in favor of the debtor" and "strictly against the creditor" consistent with the "fresh start" policy of bankruptcy courts. *Id.* at 730. In furtherance of this policy of narrowly construing the exceptions to discharge, the Debtor argues that courts have ruled that even the use of the word "trust" or similar language to describe the debtor's relationship to a third party in the document or the state law upon which the alleged fiduciary relationship is based is not dispositive. *See, e.g., Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 334, 55 S.Ct. 151, 154, 79 L.Ed. 393 (1934) (court looked beyond the language of the trust receipt to substance of transaction and found no fiduciary relationship); *Matter of Rausch*, 49

B.R. at 562 (New Jersey statute pertaining to construction contracts that provided money paid to contractor as a deposit or advance constituted a statutory trust upon the insolvency of the contractor and that the use of such funds for any payment for any purpose other than fulfilling the contract would constitute the unlawful diversion of trust funds did not impose fiduciary duty on debtor contractor for purposes of § 523); *Matter of Falk of Bethlehem,* 3 B.R. 266, 270 (Bankr. D.N.J.1980) (The use of the word trust or trust receipt in an agreement will not alter the relationship between the parties, which is essentially borrower-lender, nor change the resulting obligation to one arising from a trust).

### 3. Insolvent Corporation

#### a. New Jersey law:

The Debtor/Defendant asserts that a number of courts have considered whether the common law and/or statutory duty of a corporate officer or director of an insolvent corporation to creditors makes such an officer or director a fiduciary for purposes of § 523(a)(4) with mixed results. In New Jersey, the *AYR Composition, Inc. v. Rosenberg* court found that directors and officers owed a quasi-trust duty to a plaintiff creditor when the corporation became insolvent. 261 N.J.Super. 495, 505, 619 A.2d 592, 597 (N.J.Super.A.D.1993). Likewise, the court in *Portage Insulated Pipe Co. v. Costanzo* stated: "[w]hen a corporation becomes insolvent a quasi-trust relationship arises between its officers and directors on the one hand and its creditors on the other." 114 N.J.Super., 164, 166, 275 A.2d 452, 453 (N.J.Super.A.D.1971)(citing *Whitfield v. Kern,* 21 Backes 332, 122 N.J.Eq. 332, 340–42, 192 A. 48, 53–54 (N.J.Err. & App.1937)).

#### b. Other law:

Debtor/Defendant also points to the findings in *In re Clayton,* 198 B.R. 878, 883 (Bankr.E.D.Pa.1996) where a plaintiff's complaint was dismissed for failure to state a claim, which debtor/defendant alleges is analogous to the case presently before this Court. The Court in *Clayton* relied on its previous decision *In re Kaplan,* 162 B.R. 684 (Bankr.

E.D.Pa.1993), *aff'd* 189 B.R. 882 (E.D.Pa. 1995) where the *Kaplan* court rejected the theory that an officer or director of an insolvent corporation was a fiduciary to the corporation's creditors. The *Kaplan* court explained its rationale by stating:

> Assuming that the director of a corporation in liquidation may be a liquidating trustee for purposes of § 523(a)(4), the difficulty with finding that the relationship of the director of a corporation to its creditors automatically gives rise to an express trust of all assets held by that corporation for purposes of § 523(a)(4) broadens the scope of that provision to embrace a debtor/creditor relationship. Such an extension of § 523(a)(4) is, in our view, a stretch of § 523(a)(4) beyond the purposes for which it was intended... [T]he indebtedness to the creditors may be found not to predate the purported fiduciary relationship in this situation. Therefore, the trust relationship which arises from a corporate liquidation appears likened to a trust ex malaficio, which arises out of the very action which creates the alleged fiduciary relationship. Such a relationship does not give rise to § 523(a)(4) liability.

*See id.* at 705; *see also, In re Martin,* 162 B.R. 710, 714 (Bankr.C.D.Ill.1993) (no fiduciary relationship under section 523(a)(4) between director of insolvent corporation and the creditors of that corporation); *In re Nayee,* 99 B.R. 90, 92 (Bankr.M.D.Fla.1989) ("while it is true that an officer of a corporation has an obligation to act in a responsible manner towards the creditors, this responsibility does not rise to the level of an independent fiduciary relationship contemplated by § 523(a)(4).") *but see In re Reuscher,* 169 B.R. 398, 402–03 (S.D.Ill.1994); *In re Thorsen and Co.,* 98 B.R. 527, 529–30 (Bankr. D.Colo.1989).

Debtor/Defendant, although the sole shareholder and director of CTI, claims that there can be no fiduciary duty owed to MBCC because the Plaintiff makes no reference to any agreement or statute that would impose such a fiduciary duty upon Debtor/Defendant to MBCC. The Debtor/Defendant asserts that: (1) there is no specifically defined "trust" res under the common law doctrine;

(2) there is little guidance to the specific duties imposed on the officers and directors with respect to the res; (3) the assets may be commingled with the corporate property; (4) the res is not identifiable as property of any specific creditor. Therefore, the Debtor/Defendant argues that because this duty did not exists at the time the indebtedness was created, but came into existence by operation of law, this is analogous to a constructive trust or a trust ex-malaficio, which is triggered by an event that occurs subsequent to the establishment of a relationship between the parties.

Thus, the issue in this case, the Debtor/Defendant asserts, is whether this duty satisfies the test for finding that Carretta was acting in a fiduciary capacity for purposes of § 523(a)(4). The Debtor/Defendant claims that "the only thing that is clear from the use of the term quasi-trust by the New Jersey courts in the cases cited above is that the duties imposed on officers and directors are somehow similar to the duties of a trustee under state law yet in some way different." *See* Debtor's Brief filed July 1, 1997 at p. 18. Moreover, the Debtor/Defendant argues that "there is no dispute that this vague standard of conduct does not create the kind of fiduciary obligation contemplated by § 523(a)(4)." *Id.*

### D. Plaintiff's Assertions:

#### 1. *Plaintiff's cases relied on in this Circuit*

The Plaintiff cites to a case in this Circuit in an attempt to define what type of duty an insolvent corporation has to its creditors. The Plaintiff relies on *In re Bagel*, 1992 WL 477052 (Bankr.E.D.Pa.1992) *aff'd* 22 F.3d 300 (3d Cir.1994), for the proposition that a fiduciary duty is imposed by Pennsylvania common law between directors of a corporation and its creditors upon dissolution, which falls within the scope of § 523(a)(4). *See id.* at *16. In the *Bagel* case, the federal government's complaint sought a determination that its pre-petition judgements against Stanley Bagel, the debtor, were nondischargeable pursuant to § 523(a)(2) and/or (a)(4). *See id.* at *1. The judgements were based on the debtor's use of several corporations as his alter ego, the debtors receipt of constructively fraudulent conveyances, *and the debtor's breach of his duty as a liquidating trustee. See id.* The debtor filed a motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6), asserting that the plaintiff failed to state a cause of action. *See id.*

Specifically, Count III of the government's complaint sought a determination that the $335,236.64 judgement against the debtor, based upon the debtor's breach of his duty as a liquidating trustee, was nondischargeable pursuant to § 523(a)(4). *See id.* at *11. The *Bagel* court explained that there was a general proposition that a "corporate officer may not be a fiduciary of the corporation's creditors absent a statutory, technical or express trust." *Id.* at *12 (citing *In re Cowley*, 35 B.R. 526, 529 n. 1 (Bankr.D.Kan.1983)). Moreover, the *Bagel* court asserted that the "[t]he Supreme Court of the United States has held that the phrase 'fiduciary capacity', for bankruptcy nondischargeability purposes only, speaks of technical trusts, and not those which the law implies from contract." *Id.* (citing *Chapman v. Forsyth*, 43 U.S. 202, 207, 2 How. 202, 11 L.Ed. 236 (1844)). Importantly, the *Bagel* court noted that "[m]ost courts today...recognize that the 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." *Id.* (citing *Matter of Bennett*, 970 F.2d 138, 143 (5th Cir.1992)) (*opinion withdrawn and superseded by* 989 F.2d 779 (5th Cir.1993)).

The *Bagel* court explained that the parties in this case agreed that Pennsylvania law was the relevant nonbankruptcy law in deciding the debtor's fiduciary duty. *See id.* at *13. The *Bagel* court found that although the state statutory scheme itself did not create a fiduciary duty for all corporate dissolutions within the meaning of § 523(a)(4), Pennsylvania common law did. *See id.* at *14. Specifically, in *Heaney v. Riddle*, 343 Pa. 453, 456, 23 A.2d 456, 458 (1942), the Supreme Court of Pennsylvania held that:

> [t]he assets of a dissolved corporation constitute a trust fund for the creditors and stockholders..., and when defendants, as

liquidating trustees, distributed the assets among themselves as stockholders they made themselves personally liable, by reason of such breach of their trust, to a creditor whose right to priority could not be thus destroyed.

Therefore, the *Bagel* court found that the Pennsylvania common law established two distinct, but similar, duties: "a fiduciary duty to creditors when the corporation is dissolving; and a fiduciary duty to creditors when the corporation becomes insolvent." *Id.* at *15. Accordingly, the *Bagel* court found that "this common law duty [which arises upon dissolution of a corporation], *just like the common law fiduciary ~duty which arises upon corporate insolvency*, establishes a fiduciary relationship for purposes of § 523(a)(4)." *Id.* at *16. (emphasis added).

### 2. Plaintiff's cases outside of this Circuit

The Plaintiff also relies for persuasive authority on two recent appellate decisions where it is asserted the same type of trust relationship that arises under New Jersey law between the directors of an insolvent corporation and the corporation's creditors was held to fall within § 523(a)(4). In *In re Reuscher*, 169 B.R. 398 (S.D.Ill.1994), the plaintiffs/creditors filed a lawsuit in Illinois state court against a corporation to recover monies due under certain agreements. The complaint also sought judgement against the president and the treasurer of the corporation, who together owned a controlling interest in the corporation's stock, on the grounds that they breached a fiduciary duty to the plaintiffs/creditors by converting and misappropriating the corporation's assets before and after the dissolution of the corporation. *See id.* at 399. After the state court entered a default judgement against the corporation, but prior to a disposition of the plaintiffs' claim against the officers/debtors, the officers/debtors filed separate personal bankruptcy petitions.[1] *See id.* Thereafter, the plaintiffs commenced adversary proceedings in both bankruptcy cases seeking to have the debt represented by the state court action

declared nondischargeable under § 523(a)(4). *See id.*

The bankruptcy court granted the debtors' motion to dismiss the complaints for failure to state a claim under § 523(a)(4), concluding that the plaintiffs failed to allege the requisite fiduciary capacity. *See id.* The District Court reversed the bankruptcy court finding that under Illinois law, when a corporation becomes insolvent or is dissolved, the officers and directors then assume a fiduciary obligation to preserve and protect the corporations assets for the creditors. *See id.* at 403. The *Reuscher* court observed that: "the complaints alleged the existence of a fiduciary duty towards the creditors that arose at the time that the corporation became insolvent or was dissolved. If the debtors breached this duty....the liability created by that breach would be nondischargeable under § 523(a)(4)." *Id.* at 404.

Likewise, in *In re Bruning*, 143 B.R. 253, 254 (D.Colo.1992), the plaintiff was employed as a sales broker by a corporation of which the debtors were officers and directors. The plaintiff's contract entitled him to a share of any commission the corporation earned as a result of his sales efforts. *See id.* After the plaintiff closed a large transaction, the debtors diverted the entire commission to themselves and to another entity they controlled, rendering the corporation insolvent. *See id.* The debtors then filed a bankruptcy petition under Chapter 7 and named the plaintiff as an unsecured creditor. *See id.* The plaintiff filed an adversary proceeding alleging that the debtors committed fraud in a fiduciary capacity and that the obligation was not dischargeable under § 523(a)(4). *See id.* The bankruptcy court dismissed the complaint on the ground that the plaintiff did not allege facts sufficient to establish an express or technical trust relationship between the debtors and the plaintiff. *See id.* at 255. The district court reversed finding that the common law trust obligation a director owes to an insolvent corporation's creditors "falls squarely within ... § 523(a)(4)'s ambit." *Id.* at 256. In addition, the *Bruning* court noted

1. The Court notes that because both cases shared a common base of facts and raised interrelated issues of law, the District Court of Illinois consolidated its disposition of these appeals into one opinion. *See id.*

that the critical inquiry in determining whether a technical trust exists is "whether the fiduciary obligation arose chronologically before the wrongdoing or as a result of the wrongdoing." *Id.* The *Bruning* court concluded that the complaint stated a claim for relief since it alleged both the fiduciary relationship and that the corporation was insolvent before the debtors' alleged defalcation. *Id.*

### 3. Plaintiff's Argument

The Plaintiff disagrees that New Jersey's term "quasi-trust" renders the relationship outside the ambit of § 523(a)(4). The Plaintiff argues that New Jersey courts' use of the term "quasi-trust" is simply a means of distinguishing the trust relationship, which is imposed by law, from a formal fiduciary relationship in which rights and duties of the parties to the trust are set forth in a trust instrument. The Plaintiff argues that a technical trust may be imposed for purposes of § 523(a)(4) by virtue of a state's common law. *See In re Thorsen and Co.,* 98 B.R. 527, 529 (Bankr.D.Colo.1989). Thus, the Plaintiffs assert that § 523(a)(4)encompasses technical trusts, which have been held to include trusts that are imposed by statute or common law and that the quasi-trust is such a trust that is imposed by common law. *See In re Reuscher,* 169 B.R. at 400.[2]

### Court's Analysis

■ The issue the Court faces is whether New Jersey's term "quasi-trust" renders the relationship between the corporation and its creditors outside of the realm of § 523(a)(4). As explained by both the Debtor and the Plaintiff, there are two New Jersey court decisions that acknowledge the situation that is found in the instant case and both courts use the word "quasi-trust" to describe the

duties of the officers, directors or principal stockholders to the creditors once insolvency of the corporation occurs.

### A. Court's Analysis

#### 1. Constructive Trustee or Trust Ex Malaficio:

■ The time at which the debt came into existence is significant under § 523(a)(4) in respect to whether a fiduciary relationship existed before the debtor's alleged defalcation and not as a result of the defalcation. *See, e.g., In re Reuscher,* 169 B.R. at 400 (finding that plaintiff's complaint stated a claim for relief under § 523(a)(4) because it alleged both the existence of the fiduciary relationship and that the corporation was insolvent before the debtors' alleged defalcation occurred); *In re Bruning,* 143 B.R. at 256 (noting that the critical inquiry to determine whether a technical trust exists is "whether the fiduciary obligation arose chronologically before the wrongdoing or as a result of the wrongdoing"). In the instant case, in oral argument before this court on February 19, 1998 and in MBCC's brief filed September 22, 1997, the following is alleged by MBCC:

* MBCC had been a creditor of CTI since May, 1990 (Amended Complaint, ¶ 7, Second Amended Complaint, ¶ 8).

* Carretta is and was at all relevant times CTI's sole officer, director and shareholder. (Amended Complaint, ¶ 6, Second Amended Complaint, ¶ 7).

* CTI was allegedly insolvent as of at least August 8, 1994 (Amended Complaint, ¶ 40, Second Amended Complaint, ¶ 50).[3]

* In or around late December, 1994, Carretta allegedly misappropriated and converted the assets of CTI in question

---

**2.** The Plaintiffs argue that the irrelevance of the prefix "quasi" is clear from two decisions in the New Jersey courts. *See In re Cuevas,* 205 B.R. 457, 460 (Bankr.D.N.J.1997); *In re Corbo,* 117 B.R. 109, 111 (Bankr.D.N.J.1990). In those cases, the Plaintiff submits that the statutes that were described by the New Jersey state courts as "quasi-criminal" in nature were held to fall within the meaning of "criminal action" as that term is used in the Bankruptcy Code § 362(b)(1).

**3.** MBCC argues that CTI's insolvency manifested "as early as January 1, 1994 as CTI was unable to meet its obligations as they became due. See affidavit of Joseph Carretta sworn to February 23, 1994 in support of joint motion filed in the CTI bankruptcy case for authority to foreclose and sell assets, filed February 23, 1994 case no. 92–29015(RG), Doc. No. 391." (Plaintiff's Sept. 22, 1997 brief, pg. 14).

(Amended Complaint, ¶¶ 42–48, Second Amended Complaint, ¶¶ 52–58).

Therefore, Carretta's alleged breach of fiduciary duty occurred subsequent to the creation of the trust relationship.

The Debtor claims that because a fiduciary duty did not exist at the time the indebtedness was created, but instead came by operation of law, this is analogous to a constructive trust or a trust imposed ex malaficio. A constructive trust as defined by Black's Law Dictionary states:

> Trust created by operation of law against one who by actual or constructive fraud, by duress or abuse of confidence, or by commission of wrong, or by any form of unconscionable conduct, or other questionable means, has obtained or holds legal right to property which he should not, in equity and good conscience, hold and enjoy.

BLACK'S LAW DICTIONARY 314(6th ed.1990) (citation omitted).

> Similarly, a trust ex malaficio is defined as: Defined variously as from or growing out of wrongdoing; tortious; tortiously; growing out of, or founded on, misdoing or tort; on account of misconduct; by virtue of or out of an illegal act.

BLACK'S LAW DICTIONARY 575 (6th ed.1990).

In a recent 7th circuit decision, *In re Marchiando*, 13 F.3d 1111, 1115–1116 (7th Cir.), *cert. denied Illinois Dep't of Lottery v. Marchiando*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994), the *Marchiando* court explained that "in the case of a constructive or resulting trust there is no fiduciary duty until a wrong is committed." In the instant case, there was a fiduciary duty once CTI became insolvent, which was allegedly on or by August 8, 1994, *see* Plaintiff's Brief filed Sept. 22, 1997 at p. 13, and at that time a fiduciary duty existed to the creditors. It was after this alleged fiduciary duty was created that the Debtor/Defendant allegedly misappropriated the CTI's assets for his personal gain. *See id.* Hence, a constructive trust was not created because the fiduciary duty existed prior to the alleged wrong that was committed.

Likewise, it is also clear that a trust ex malaficio was not created by the Debtor/Defendant actions. Specifically, the fiduciary obligation arose chronologically before Carretta's alleged wrongdoing and not as a result of the wrongdoing and, thus, the Debtor/Defendant was not a trustee ex malaficio.

### 2. Cases in this Circuit:

Next, the Debtor/Defendant asserts that a case in this Circuit that the Plaintiff cites to is *In re Bagel*. The Debtor claims that as noted in the *Kaplan* decision, the *Bagel* decision was questioned by the court, in a companion case, *United States v. Cocivera*, 1992 WL 560937 (Bankr.E.D.Pa.1992). The *Kaplan* court stated:

> Moreover, as we indicated in our quotation in the Memo, [*In re Kaplan*, 1993 WL 367108], slip op. at *1 [(Bankr.E.D.Pa. 1993)], from our decision in a companion case to *Bagel*, *In re Cocivera (U.S. v. Cocivera)*, Bankr.No. 92–12042S, Adversary No. 92–0739S, 1992 WL 560937, we question the result in *Bagel*, noting that the indebtedness to the creditors may be found not to predate the purported fiduciary relationship in this situation. Therefore, the trust relationship which arises from a corporate liquidation appears likened to a trust ex malaficio, which arises out of the very action which creates the alleged fiduciary relationship. Such a relationship does not give rise to § 523(a)(4) liability.

*See Kaplan*, 162 B.R. at 705.

In *In re Bagel*, there was an issue as to whether the fiduciary duty arose at the same time the corporate assets were being liquidated and distributed to shareholders. *See id.* at *16. The instant case differs, however, because CTI was already allegedly insolvent, which created an alleged fiduciary duty and it was after that the Debtor/Defendant allegedly misappropriated CTI's assets for his own personal gain.

Several other relevant Third Circuit cases inform the Court's decision in this case. *See, e.g., Voest–Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 209 & 217 n. 25 (3d Cir.1990) (under Pennsylvania law, corporate officers "breached their fiduciary duty owing to [the corporation] and thus to

[the corporation's] creditors when they participated in the fraudulent conveyance of [the corporation's] assets...for less than full consideration' while the corporation was insolvent"); *Brown v. Presbyterian Ministers Fund*, 484 F.2d 998, 1005 (3d Cir.1973) ("[a]s an officer, director and principal stockholder of an insolvent corporation... [the defendant] was duty bound to act with absolute fidelity to both creditors and stockholders").

In addition, in *In re Docteroff*, 133 F.3d 210 (3d Cir.1997), the court dealt with whether the judgement debt was nondischargeable under the fiduciary fraud discharge exception of § 523(a)(4). The *Docteroff* court stated the following facts:

On May 25, 1989, the Burger Boat Company, Inc. ("Burger") agreed to custom build a 105–foot luxury yacht for Bert L. Wolstein ("Wolstein") to be delivered to Wolstein in August 1990 for a purchase price of approximately $4.5 million. The yacht was to be called the Lady Iris. Pursuant to the terms of the agreement, Wolstein received a security interest in the yacht while it was under construction. Burger required Wolstein to make payments billed by Burger as the construction of the yacht proceeded. These progress payments were to be used to construct the yacht. Construction of the yacht commenced. In March 1989, Tacoma Boatbuilding Company ("Tacoma"), in a leveraged buy out, purchased Burger for $3 million in cash to be paid prior to the sale's closing and a $1 million promissory note. The debtor in this case, Norman Docteroff, is a director and officer of Tacoma. Tacoma established United Shipbuilding of America, Inc. ("USA"), a holding company which would own Burger capital stock following the purchase. Thus, there was a direct corporate link between Tacoma, USA, and Burger.

*Id.* at 213.

The judgement creditors brought an adversary proceeding against the Debtor, Docteroff, alleging that the default judgement entered against the Debtor collaterally estopped him from denying that he had defrauded and embezzled them in connection with the yacht construction contract and that the debt was nondischargeable. The district court and the bankruptcy court concluded that the debt was not dischargeable pursuant to, among other provisions, 11 U.S.C. § 523(a)(4) because the Debtor obtained it while he owed a fiduciary duty to Wolstein and by embezzling funds from Burger to Wolstein. *See id.* at 216–17. The *Docteroff* court made the following findings:

The complaint alleged that the diversion of the progress payments 'left Burger...unable to conduct its operations and meet its obligation to · construct the Lady Iris.' (Comp.¶ 30). This established that Burger was insolvent, and that it was unable to pay its bills. A corporation is insolvent when it is unable to meet its obligations in the ordinary course of business. *Northern State Constr. Co. v. Robbins*, 76 Wash.2d 357, 457 P.2d 187, 191 (1969). Thus, while there is nothing in the record establishing that [the Debtor] was a director or officer of Burger, according to the complaint filed in the Washington case, he was a director and shareholder of Tacoma, which effectively owned Burger. For that reason, he owed a fiduciary duty to Burger's creditors. When Burger became insolvent, [the Debtor's] evident control of Burger enabled him to cause the diversion of the progress payments and permit him to violate a fiduciary duty he owed to Burger's creditors. Cf. *In re Teltronics Services, Inc.*, 29 B.R. 139, 170 (Bankr.E.D.N.Y. 1983).

Hence, a transfer of funds from Burger when it was insolvent to pay a debt to [the Debtor] violated [the Debtor's] fiduciary duty to Burger's creditors...

*Id.* at 217.

■ Thus, the *In re Docteroff* case reveals that the Third Circuit has found that a fiduciary duty is owed to the creditors once a corporation becomes insolvent. This Court is, therefore, unwilling to dismiss the Plaintiff's complaint on the grounds that it fails to state a claim. In addition, Carretta's argument that the language in the Third Circuit's *Docteroff* opinion is mere "dicta" is unpersuasive. The Third Circuit has acknowledged the validity of the assertion set forth by the Plaintiff—that the Debtor/Defendant owes a

fiduciary duty to the creditors pursuant to § 523(a)(4) when the corporation became insolvent. This Court notes that New Jersey law was not specifically noted or cited by the Third Circuit in regards to the issue of fiduciary liability. The *Docteroff* decision, nonetheless, is consistent with New Jersey law. *See, e.g., Whitfield*, 122 N.J.Eq. at 342, 192 A. 48 ("[u]pon the insolvency of the ordinary private corporation a quasi-trust relationship arises between its directors and creditors"). *Accord., AYR Composition Inc. v. Rosenberg*, 261 N.J.Super. 495, 505, 619 A.2d 592 (N.J.Super.A.D.1993); *Portage Insulated Pipe Co. v. Costanzo*, 114 N.J.Super. 164, 166, 275 A.2d 452 (N.J.Super.A.D.1971). Accordingly, the Debtor/Defendant's Motion to Dismiss Count One of the Amended Complaint is DENIED.

### Debtor/Defendant's Other Arguments

The Debtor/Defendant also argues the indebtedness that MBCC seeks to hold Mr. Carretta responsible, which is the full amount of the CTI judgement, arose out of an arms-length commercial relationship between MBCC and CTI. The Debtor/Defendant claims the fiduciary relationship that MBCC alleges was created when CTI became insolvent did not exist when this debt was incurred. Therefore, the Debtor/Defendant asserts that the indebtedness set forth in the CTI judgement was not created by a wrongful act committed by Carretta while acting in a fiduciary capacity.

 In contrast, the Plaintiff explains that the Debtor/Defendant's argument misses the mark. The Plaintiff claims that the critical inquiry is not whether CTI was insolvent when CTI became indebted to MBCC, but rather whether CTI was insolvent when Carretta misappropriated and converted CTI's assets for his alleged personal gain. *See In re Bruning*, 143 B.R. at 256. Therefore, Carretta's breach of a fiduciary duty occurred subsequent to the creation of the trust relationship and rendered Carretta personally liable for CTI's obligations to MBCC. We agree. (See reason stated *supra* regarding constructive trusts and trust ex malaficio.)

The Debtor/Defendant also asserts the following arguments: (1) MBCC's claim fails to recognize that under New Jersey law an officer or director of an insolvent corporation who disposes of corporate assets in violation of his or her duty only becomes liable to the creditor to the extent of the value of transferred assets as of the date of the transfer, citing *AYR Composition, Inc.*, 261 N.J.Super. at 507, 619 A.2d 592; and (2) the assets held in trust were held for all creditors—not just MBCC—and that recovery would be shared proportionally, citing *Portage Insulated Pipe*, 114 N.J.Super. at 166–167, 275 A.2d 452, and thus, MBCC would still not be entitled to the relief which it seeks in the First Count of the Amended Complaint, which is a judgement against Carretta for the full amount of the CTI judgement.

The Plaintiff asserts that these issues specifically go to issue of damages and not liability and is not a basis to grant the Motion to Dismiss the Amended Complaint, and that such issue is for a later date in these proceedings. We agree, and thus, the Debtor/Defendant's Motion to Dismiss Count One of the Amended Complaint is DENIED. This Court also declines to make a ruling at this time in the context of the instant motion to dismiss Count One of the Complaint as to the extent of any allowable damages.

### Conclusion

For the foregoing reasons stated above, the Debtor/Defendant's Motion to Dismiss Count One of the Amended Complaint is hereby DENIED.

An Order shall be submitted in accordance with this Opinion.