In re Kenneth P. KALLMEYER and Kathryn J. Flegel, Debtors.

Kathryn J. Flegel, Appellant,

v.

Burt & Associates, P.C., Appellee.

BAP No. OR–99–1371–RyKMe.

Bankruptcy No. 395–36652–elp7.

Adversary No. 98–3209–elp.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 21, 1999.

Decided Dec. 3, 1999.

Douglas P. Cushing, Duboff & Ross, PLCC, Portland, OR, for Kathryn J. Flegel.

Teresa H. Pearson, Greene & Markley, Portland, OR, for Burt & Associates, PC.

Before RYAN, KLEIN, and MEYERS, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

In 1994, Kathryn Flegel ("Debtor"), a physician, formed Northwest Internal Medicine ("NIM") and provided patient and billing services through NIM until October 1995. As of October 1, 1995, Debtor ceased providing services through NIM and organized Primary Care Associates ("PCA"), providing and billing all of her patient services through PCA after this date. Although she was no longer providing services through NIM, NIM distributed $71,800 to or on behalf of Debtor subsequent to October 1, 1995.

In September 1995, Burt & Associates ("Plaintiff") sued NIM for unpaid legal fees and later reduced its claim to judgment (the "Judgment").

In September 1995, Debtor and her husband filed their chapter 13 [1] bankruptcy petition. In 1998, they converted the case to chapter 7. Plaintiff filed a complaint (the "Complaint") to obtain a determination that the Judgment was nondischargeable under §§ 523(a)(4) and (a)(6). After trial, the bankruptcy court held that the Judgment was nondischargeable under § 523(a)(4) as a debt for defalcation while acting in a fiduciary capacity. Debtor timely appealed.

We AFFIRM.

## I. FACTS

The following facts are undisputed. In December 1994, Debtor formed NIM and was its sole director, officer, and shareholder. Debtor provided patient and billing services through NIM from December 1994 until October 1995, when she formed PCA. After October 1, 1995, all of Debtor's medical and billing services were provided through PCA. Despite the fact that NIM ceased its operations upon the formation of PCA, between October 1, 1995 and October 1, 1996, NIM paid to Debtor or to taxing authorities on her behalf a total of $71,800.

On September 15, 1995, Plaintiff sued NIM for $47,451 in unpaid legal fees. In September 1996, Plaintiff obtained the Judgment, which was in the amount of $56,737.02 plus interest. Plaintiff only recovered $520.86 of the Judgment.

On September 29, 1995, Debtor and her husband filed a chapter 13 bankruptcy petition. Debtor listed as assets her 100% shareholder interest in NIM, valued at $25,000, and $1,900 in accrued wages owed by NIM for services performed in September 1995. Debtor also scheduled the Judgment. On March 3, 1998, the case was converted to chapter 7.

In February 1999, Plaintiff filed the Complaint. The Complaint alleged that Debtor, as NIM's sole shareholder, officer, and director, had breached her fiduciary duty to Plaintiff,[2] because subsequent to NIM's insolvency, NIM transferred $71,800 to Debtor, a sum substantially in excess of the $1900 she was owed for wages. Therefore, the Complaint sought a determination that the Judgment was nondischargeable under § 523(a)(4) as a defalcation while acting in a fiduciary capacity. The Complaint also alleged that Debtor willfully and maliciously injured Plaintiff and that the Judgment was nondischargeable under § 523(a)(6).

After a trial, the bankruptcy court ruled in favor of Debtor on the § 523(a)(6) cause of action. However, it held that because NIM was insolvent as of October 1, 1995 and ceased its operations as of that date, Oregon law imposed a fiduciary duty on Debtor, as a director, to preserve NIM's assets for the benefit of its creditors. By transferring $69,900 to herself without justification, the bankruptcy court held that Debtor breached her fiduciary duty to Plaintiff and committed a defalcation.

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. It its opening brief, Plaintiff states that it was NIM's sole unpaid creditor.

Therefore, the bankruptcy court determined that the Judgment was nondischargeable under § 523(a)(4).

The nondischargeability judgment was entered on April 30, 1999, and Debtor timely appealed.

## II. ISSUES

A. Whether the bankruptcy court erred in determining that Debtor was a fiduciary within the meaning of § 523(a)(4).

B. Whether the bankruptcy court erred in determining that NIM was insolvent as of October 1, 1995.

## III. STANDARD OF REVIEW

■ We review de novo the bankruptcy court's determination that Debtor was a fiduciary within the meaning of § 523(a)(4). *See Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986).

■ We review the bankruptcy court's factual determination that NIM was insolvent as of October 1, 1995 for clear error. *See Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.),* 96 B.R. 275, 277 (9th Cir. BAP 1989). "A finding is clearly erroneous if, after review of the record, the Panel is left with a definite and firm conviction that error has been committed." *Id.*

## IV. DISCUSSION

A. *The Bankruptcy Court Did Not Err in Determining that Debtor Was a Fiduciary Within the Meaning of § 523(a)(4).*

■ The bankruptcy court held that Debtor was a fiduciary within the meaning of § 523(a)(4), which requires either an express or technical trust that arises before and independently of any wrongdoing. *See Ragsdale,* 780 F.2d at 796. The bankruptcy court determined that Debtor was a fiduciary because of Oregon's "trust fund doctrine," which provides that a director of an insolvent corporation that has ceased doing business is a trustee for the corporation's creditors and must hold the corporate assets for the creditors' benefit. *See Gantenbein v. Bowles,* 103 Or. 277, 203 P. 614, 619 (1922). The bankruptcy court held that NIM was insolvent as of October 1, 1995 and that Debtor, as its sole director, was a fiduciary of NIM's creditors as of that date. Because the fiduciary duty arose independent of any wrongdoing by Debtor, the court held that it satisfied the requirements of § 523(a)(4).

On appeal, Debtor argues that although Oregon law imposed a fiduciary duty on her, this fiduciary obligation is not the narrow obligation required by § 523(a)(4). Debtor contends that the fiduciary obligation arose only after NIM distributed money to Debtor after October 1, 1995, not prior to that date, and that she therefore was not a fiduciary within the meaning of § 523(a)(4). We disagree.

■ Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Whether a debtor is a fiduciary within the meaning of § 523(a)(4) is a question of federal law and is narrowly interpreted. *See Ragsdale,* 780 F.2d at 796. The Ninth Circuit has held that "[t]he trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a 'trustee' before the wrongdoing and without reference to it. These requirements eliminate constructive, resulting or implied trusts." *Id.* (citation omitted); *see also Lewis v. Scott (In re Lewis),* 97 F.3d 1182, 1186 (9th Cir.1996) (holding that Arizona law imposes upon business partners a fiduciary duty within the meaning of § 523(a)(4) because the duty arises independently of any wrongdoing); *Woodworking Enters., Inc. v. Baird (In re Baird),* 114 B.R. 198, 203–04 (9th Cir. BAP 1990) (holding that Arizona law imposes a fiduciary duty within the meaning of § 523(a)(4) by requiring certain sums paid to contractors to be held in trust for the benefit of subcontractors or

suppliers because the trust exists independent of and prior to any wrongdoing). Although federal law determines whether the debtor is a fiduciary, state law must be consulted to determine whether a trust exists. *Ragsdale*, 780 F.2d at 796.

■ Oregon has adopted the trust fund doctrine which provides that directors of a corporation owe its creditors a fiduciary duty if either of the following occurs: (1) the corporation suspends its business and becomes insolvent or (2) the corporation's assets are placed in the possession of the court and it ceases to be a going concern. *See Gantenbein*, 203 P. at 617. Once that occurs, the corporation's directors hold its assets in trust for equal distribution among its creditors and "cannot use those assets to prefer themselves as creditors ... to the prejudice of general creditors." *Id.* at 619. Directors who fulfill their fiduciary duties by preserving the corporation's assets and properly distributing them to its creditors will not be subject to liability. However, a director who breaches this fiduciary duty by misappropriating corporate assets for personal gain will be held liable under the trust fund doctrine.

■ Here, once NIM became insolvent and ceased doing business, the trust fund doctrine imposed a fiduciary duty upon Debtor to hold NIM's assets in trust for the benefit of its creditors and to distribute those assets equally. The fiduciary duty was imposed prior to any defalcation, and no personal liability arose until Debtor breached this fiduciary obligation. Because the fiduciary duty arose independently of any wrongdoing and existed prior to and without reference to it, we hold that the bankruptcy court properly concluded that the trust fund doctrine imposes a fiduciary obligation upon directors within the meaning of § 523(a)(4).[3]

B. *The Bankruptcy Court Did Not Err in Including the Debt Owed to NIM in Calculating Whether Debtor Was Insolvent.*

■ In analyzing whether NIM was insolvent as of October 1, 1995, the bankruptcy court utilized a balance sheet approach, using NIM's tax return for the fiscal year from October 1, 1995 through September 30, 1996 and a balance sheet attached to the tax return. The bankruptcy court reconstructed the balance sheet to add several omitted assets and liabilities.[4] As of October 1, 1995, this balance sheet reflected that liabilities exceeded assets by $10,021.60. The bankruptcy court therefore found that NIM was insolvent as of October 1, 1995, prior to Debtor's defalcation.

On appeal, Debtor contends that the bankruptcy court clearly erred in finding that NIM was insolvent as of October 1, 1995 because in calculating liabilities, it included the Judgment, which Debtor contends was disputed and therefore erroneously included. We disagree.[5]

The Code defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such

---

**3.** We note that other courts that have considered the issue have similarly held that a breach of the fiduciary duty imposed by the trust fund doctrine · may create a nondischargeable debt under § 523(a)(4). *See Energy Prods. Eng'g, Inc. v. Reuscher (In re Reuscher)*, 169 B.R. 398, 403 (S.D.Ill.1994); *Mercedes–Benz Credit Corp. v. Carretta (In re Carretta)*, 219 B.R. 66, 73–74 (Bankr.D.N.J. 1998); *Miramar Resources, Inc. v. Shultz (In re Shultz)*, 208 B.R. 723, 728–29 (Bankr. M.D.Fla.1997); *Berres v. Bruning (In re Bruning)*, 143 B.R. 253, 255–56 (D.Colo.1992).

**4.** The bankruptcy court added the following items: (1) $96,321 in accounts receivable; (2) a $56,737.02 liability owed to Plaintiff; (3) a

$47,386.07 liability owed to Dr. Zeller; (4) $319.51 owed to Dr. Werdland; and (5) $1,900 owed to Debtor for unpaid wages.

**5.** Debtor also argues for the first time on appeal that Plaintiff was bound by its statement in its trial brief that NIM had been insolvent since early 1996. However, Debtor did not raise this objection before the bankruptcy court and did not object to Plaintiff's argument or evidence at trial that NIM was insolvent as of October 1, 1995. Debtor cannot raise this issue for the first time on appeal. *See O'Rourke v. Seaboard Surety Co. (In re Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989).

entity's property." 11 U.S.C. § 101(32)(A).[6] A debt is a liability on a claim. *See* 11 U.S.C. § 101(12). A claim, in turn, is defined as including a right to payment, "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A). Debtor has cited no case law to the contrary. Although Debtor may have disputed her personal liability for the Judgment, the Judgment against NIM was final and undisputed.[7] Therefore, the bankruptcy court properly included the Judgment when calculating NIM's insolvency.

## V. CONCLUSION

When a corporation becomes insolvent and ceases doing business, Oregon law requires the directors to hold the corporation's assets in trust for the benefit of the corporate creditors. Because this fiduciary relationship arises independent of any wrongdoing, a defalcation committed after the fiduciary duty arises may be nondischargeable pursuant to § 523(a)(4). Effective October 1, 1995, NIM was insolvent and Debtor, as NIM's sole director, owed NIM's creditors a fiduciary duty to hold NIM's assets in trust for their benefit. Because this fiduciary relationship arose independently of any wrongdoing, the bankruptcy court did not err in determining that Debtor was a fiduciary within the meaning of § 523(a)(4).

In addition, the bankruptcy court properly included the Judgment as a liability when determining whether NIM was insolvent.

Accordingly, we AFFIRM.

---

**6.** The Code excludes from the insolvency calculation "property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors" and "property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. §§ 101(32)(A), (B).

**7.** The transcript of the trial reflects that NIM initially opposed Plaintiff's lawsuit against it but that by the time of trial, NIM had decided not to continue defending the lawsuit.